# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRYSTAL SADLER, on behalf of herself, individually and on behalf of all similarly situated individuals,<br><br>   *Plaintiffs,*<br><br>  *v.*<br><br>TARGET CORPORATION,<br><br>   *Defendants.* | Civ. No. 1:23-cv-00030-CPO-SAK<br><br><br>Jury Trial Demanded |

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

# [REDACTED]

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.    FACTUAL BACKGROUND .................................................................2

    A.    This Court has Previously Determined that the Time at Issue is Recoverable Under New Jersey's Wage and Hour Laws Given That Employers Must pay Their Employees "For All Hours Worked," Which Includes All Time Employers Require Their Employees to be at his or her Place of Work ....................................2

    B.    Plaintiffs Seek Payment for All Hours Required to be at Their Place of Work, Which Includes Time Spent Traveling to Assigned Departments to Clock in on Designated Walkways and to Travel on Designated Walkways to go Through Security Screening Measures and Badge Out on the Exit, Which is by Target's Design and for its Benefit ......................................................5

    C.    Common Evidence ......................................................................6

        1.    Target Employed Plaintiff and Thousands of Class Members at its Three New Jersey Warehouses, Which Collectively Span Over 3.4 Million Square Feet ......................6

        2.    Target Does Not Pay Class Members for Time Spent Walking in the Warehouse Prior to the Beginning of Their Scheduled Shift .................................................7

        3.    Target Does not Pay Class Member Post-Shift Time Within the Facility After Class Members Clock Out to Go Through Security Screening Measures ..................................9

        4.    Target's Uniform Payroll and Time Data Shows the Amount of Time the Class Members are Actually Paid ...........10

        5.    The Walking Time is Measurable for the Class Members .......11

        6.    After Conducting Secret Time Studies of the Security Screening Measures, Target Made "Retro Payments" of 3 or 8 Minutes Per Shift to Class Members at the Perth Amboy and Logan Warehouses Depending on Location .........12

III.    ARGUMENT....................................................................................13

    A.    The Proposed Class .........................................................................13

    B.    Class Certification is Proper Under Rules 23(a) .................................13

      1.    The Proposed Class is Sufficiently Numerous ........................14

      2.    Plaintiffs' Claims Present Questions of Law and Fact Common to the Class ................................................................15

      3.    Plaintiff's Claims are Typical of Those of the Class Members.....................................................................................16

      4.    Plaintiff and Class Counsel Will Fairly and Adequately Represent the Class ....................................................................18

    C.    Class Certification is Proper Under Rule 23(b)(3)............................20

      1.    The Proposed Class is Ascertainable ........................................21

      2.    Common Issues Predominate.....................................................22

      3.    Class Action Superiority ...........................................................26

      4.    Rule 23(g) Appointment of Class Counsel is Warranted .........29

IV.    CONCLUSION ............................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agostino v. Quest Diagnostics, Inc.*,
   256 F.R.D. 437 (D.N.J. 2009)..........................................................................21

*Alfonso v. FedEx Ground Package Sys.*,
   2024 U.S. Dist. LEXIS 40928 (D. Conn. Mar. 8, 2024) ....................................29

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).........................................................................................14

*Anderson v. Mt Clemens Pottery Co.*,
   328 U.S. 680 (1946)...........................................................................................3

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ...........................................................................15, 16

*Barr v. Harrah's Entertainment, Inc.*,
   242 F.R.D. 287 (D.N.J. 2007)...........................................................................16

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) .............................................................................17

*Boley v. Universal Health Servs., Inc.*,
   36 F.4th 124 (3d Cir. 2022) ..............................................................................16

*Byrd v. Aaron's Inc.*,
   784 F.3d 154 (3d Cir. 2015) .............................................................................21

*Caddick v. Tasty Baking Co.*,
   No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 206991 (E.D. Pa. Oct.
   27, 2021) .....................................................................................................19, 30

*Carroll v. Stettler*,
   No. 10-2262, 2011 U.S. Dist. LEXIS 121171 (E.D. Pa. Oct. 19,
   2011) (appointing Charles J. Kocher as class counsel and certifying
   class) .................................................................................................................19

*Casco v. Ponzios RD, Inc.*,
    2018 U.S. Dist. LEXIS 73869 (D.N.J. Apr. 29, 2018) ............................14, 19, 28

*Crawford v. FHG Realty Urban Renewal LLC* (D.N.J. Mar 15, 2019) .................19

*Davis v. Target Corporation*,
    2023 U.S. Dist. LEXIS 214818 (E.D. Pa. Dec. 1, 2023)............................*passim*

*Ehret v. Uber Techs., Inc.*,
    148 F. Supp. 3d 884 (N.D. Cal. 2015) ................................................................27

*Farrell v. FedEx Ground Packing, Inc.*,
    478 F. Supp 3d 536 (D.N.J. 2020) ...................................................................3, 5

*In re Flat Glass Antitrust Litig.*,
    191 F.R.D. 472 (W.D. Pa. Nov. 5, 1999) ..........................................................28

*General Telephone Co. of the Southwest v. Falcon*,
    457 U.S. 147 (1982)...........................................................................................13

*Hall v. Adelphia Three Corp.*,
    No. 1:21-cv-01106 (D.N.J. 2024) ................................................................19, 30

*Hargrove v. Sleepy's LLC*,
    No. 22-2040, 2023 U.S. App. LEXIS 14553 (3d Cir. June 12,
    2023) ..................................................................................................................25

*Huber v. Simon's Agency, Inc.*,
    84 F.4th 132 (3d Cir. 2023) ..............................................................................22

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2009) ........................................................................13, 14

*King Drug Company of Florence Inc. v. Cephalon, Inc.*,
    309 F.R.D. 195 (E.D.Pa. 2015).........................................................................26

*Mack v. Six Flags Great Adventure, LLC*,
    No. 23-3813, 2024 U.S. Dist. LEXIS 2986 (D.N.J. Jan. 5, 2024) ..............3, 4, 5

*Maia v. IEW Constr. Grp.*,
    257 N.J. 330 (N.J. 2024) .....................................................................................6

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016) ...............................................................14

*Neale v. Volvo Cars of North America, LLC*,
   794 F.3d 353 (3d Cir. 2015) ..........................................................22, 24

*Ramcharan v. A.F.L. Quality, Inc.*,
   No. 1:12-cv-07551, 2014 U.S. Dist. LEXIS 124441 (D.N.J Sep. 5,
   2014) .................................................................................................21

*Renig v. RBS Citizens, N.A.*,
   912 F.3d 115 (3d. Cir. 2018) ...............................................................16

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) ..................................................13, 15, 16

*Rodriguez v. Nat'l City Bank*,
   726 F.3d 372 (3d Cir. 2013) ...............................................................15

*Stebbins v. Petro. Equip. Servs.*,
   2022 U.S. Dist. LEXIS 42484 (D.N.J. Mar. 9, 2022) .........................4

*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*,
   321 U.S. 50 (1944)................................................................................3

*Tyson Foods v. Bouapheko*,
   577 U.S. 442 (2016).......................................................................23, 24

*Univ. of P.R. Ret. Sys. v. Lannett Co.*,
   No. 21-3150, 2023 U.S. App. LEXIS 9143......................................23

*Vaccaro v. Amazon*,
   No. 18-11852, 2020 U.S. Dist. LEXIS 114526, 2020 WL 3496973
   (D.N.J. June 29, 2020) ....................................................................4, 5

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ...............................................................27

*Weisfeld v. Sun Chem. Corp.*,
   210 F.R.D. 136 (D.N.J. 2002)..............................................................17

*Wetzel v. Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d. Cir. 1975) ...............................................................18

*Zinberg v. Washington Bancorp, Inc*,
    1385 F.R.D. 397 (D.N.J. 1990)...........................................................................18

## Statutes and Regulations

Fair Labor Standards Act of 1938, 29 U.S.C. § 203.................................................19

N.J.A.C. 12:56-5.1 ...................................................................................3, 13, 17, 25

New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a4...................................*passim*

## Court Rules

Federal Rule of Civil Procedure 23 .................................................................*passim*

Federal Rule of Civil Procedure 26(e) .....................................................................15

Federal Rule of Civil Procedure 30(b)(6) ................................................................12

## I.    INTRODUCTION

Pursuant to Rule 23, Class Representative Plaintiff Krystal Sadler ("Plaintiff") moves to certify this class action lawsuit brought on behalf of a class of hourly workers who, since August 6, 2019, have been employed by Defendant Target Corporation ("Target") at its three New Jersey warehouses that span over 3.4 million square feet. Target has a uniform policy of not paying its hourly employees for all hours worked. Target did not pay for pre-shift time required to travel to their assigned departments to clock-in at "home department timeclocks" that it chose to spread throughout the millions of square feet of warehouse. And, on the exit, Target stopped paying Plaintiffs once they clocked out, even though it required them to perform work by walking on certain designated pathways to undergo security screening measures, badge out (again), and exit the main entrance so it could watch them on the way out. As a result, Target did not pay Plaintiff and the Class members for all hours worked comprised of (1) pre-shift the time spent traveling to their assigned departments to clock-in; and (2) the post-shift time spent traveling inside the warehouses from timeclocks where they punch out.

This case is not novel.

Six months ago, the Eastern District of Pennsylvania certified a litigated class of Pennsylvania Target warehouse workers on the same issue. *See* Ex. M, *Davis v. Target Corporation*, 2023 U.S. Dist. LEXIS 214818 (E.D. Pa. Dec. 1, 2023). In

*Davis*, the Court granted class certification on the same issue under Pennsylvania law, calling class certification "***an attractively efficient way***" to provide the answer to a common legal question, i.e. whether withholding pay for walking time is legally permissible. No Rule 23(f) petition was filed in that case and class notice was disseminated to 5,641 class members (defined the same way) with only 20 opt-outs.

The reasoning in *Davis v. Target* applies here, where the class claims converge on a single legal question common to all putative Class members: whether the time spent in the same pre- and post-shift activities constitutes "hours worked" under New Jersey law. Common evidence will be at the center of both the liability and damages determinations, including Target's uniform policies, the layout of each warehouse, and payroll and time data.

Accordingly, this Court should certify this Class under Rule 23(b)(3) and authorize the dissemination of class notice.

## II.    FACTUAL BACKGROUND

### A.    This Court has Previously Determined that the Time at Issue is Recoverable Under New Jersey's Wage and Hour Laws Given That Employers Must pay Their Employees "For All Hours Worked," Which Includes All Time Employers Require Their Employees to be at his or her Place of Work

In New Jersey, employers must: (1) pay their employees the mandatory minimum wage under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a4; and (2) pay their employees "for all hours worked" under the NJWHL,

N.J.A.C. 12:56-5.1. "Hours worked" includes all time that employers require their employees to "be at his or her place of work." N.J.A.C. 12:56-5.2(a). Accordingly, under New Jersey law, employers must pay their employees for all time they spend passing through security screenings, as well as the time they are required to spend walking to and from their work locations while on the employer's premises. *See Farrell v. FedEx Ground Packing, Inc.*, 478 F. Supp 3d 536, 543 (D.N.J. 2020) (finding that time workers spent undergoing post-shift security screenings was compensable as hours worked pursuant to N.J.A.C. 12:56-5.2(a)); *Anderson v. Mt Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946) (holding that "time spent walking from timeclocks to work benches" across an 8-acre facility was compensable); *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 50 (1944) (holding compensable the time spent traveling between mine portals and underground work areas).

Recently, in *Mack v. Six Flags Great Adventure, LLC*, Six Flags argued that plaintiff failed to state a viable claim for relief for unpaid time spent walking the 510-acre facility and waiting in security lines – the same claims alleged here. Judge Shipp rejected Six Flags' argument, reasoning that:

> this court has determined that, at the motion to dismiss stage, "any time spent undergoing mandatory pre-shift and post-shift security screenings may be compensable under the NJWHL." *Farrell v. FedEx Ground Package Sys.*, 478 F. Supp. 3d 536, 543 (D.N.J. 2020) (finding that the time []workers spent undergoing post-shift security screenings

3

> was compensable as hours worked pursuant to N.J.A.C. 12:56-5.2(a)); *see also Vaccaro v. Amazon*, No. 18-11852, 2020 U.S. Dist. LEXIS 114526, 2020 WL 3496973, at \*12 (D.N.J. June 29, 2020) (finding that "as pleaded, the time spent undergoing mandatory post-shift security screenings is compensable under the NJWHL.").

*Mack v. Six Flags Great Adventure, LLC*, No. 23-3813, 2024 U.S. Dist. LEXIS 2986, at \*12-13 (D.N.J. Jan. 5, 2024) (citing *Farrell*, 478 F. Supp. 3d at 543). Likewise, in *Vaccaro*, Judge Wolfson found that the NJWHL does not incorporate the Portal-to-Portal Act, and thus, mandatory post-shift security screenings are compensable. *Vaccaro v. Amazon*, No. 18-11852, 2020 U.S. Dist. LEXIS 114526, at \* 17-19 (D.N.J. June 29, 2020); *see also Stebbins v. Petro. Equip. Servs.*, 2022 U.S. Dist. LEXIS 42484, at \*24 (D.N.J. Mar. 9, 2022) ("The Court finds *Vaccaro's* reasoning persuasive and also concludes that the NJWHL does not incorporate the Portal-to-Portal Act's provisions making travel time to and from work and preliminary and postliminary activities non-compensable.").

Accordingly, under New Jersey law, the rule is that employers must pay their employees for all hours worked, which includes all time they are required to be at his or her place of work.

**B.    Plaintiffs Seek Payment for All Hours Required to be at Their Place of Work, Which Includes Time Spent Traveling to Assigned Departments to Clock in on Designated Walkways and to Travel on Designated Walkways to go Through Security Screening Measures and Badge Out on the Exit, Which is by Target's Design and for its Benefit**

Relying on this rule, Plaintiffs challenge Target's company-wide policy of failing to pay hourly employees for time associated with: (1) pre-shift travel within the distribution center to employees' assigned departments; and (2) post-shift travel time to exit through Target's security screening measures. ECF No. 33 at ¶ 2. Plaintiffs contend that the time associated with these activities is compensable under the "all hours worked" regulation as interpreted by the District of New Jersey in *Mack*, *Farrell*, and *Vaccaro*. Target disagrees. *Compare* ECF No. 33 at ¶ 3 *with* ECF No. 34 (Answer) at ¶ 3 (denying allegation that "This time is compensable under New Jersey law"); ECF Nos. 33-34 at ¶ 35; ECF No. 19 (Joint Discovery Plan) at 2 ("the time at issue in Plaintiff's complaint is not compensable time worked").

This time is compensable because Target required that Plaintiff and Class members use designated walkways and Target controlled the placement of their timeclocks. Therefore, Target controlled the distance they had to travel to clock-in to certain designated "home department timeclocks" and to travel from those timeclocks to go through security screening measures to badge out, again, at the singular main entrance. This was by Target's design and for its own benefit.

### C.    Common Evidence

#### 1.    Target Employed Plaintiff and Thousands of Class Members at its Three New Jersey Warehouses, Which Collectively Span Over 3.4 Million Square Feet

Target admits it is a general merchandise retailer in the United States. ECF No. 34 at ¶ 8. Target admits to employing "hundreds of thousands of employees." *Id.* Target determined that the putative class as originally pled includes 8,104 hourly, non-exempt workers at its New Jersey warehouses. ECF No. 1 (Removal Notice) at ¶ 13. The revised class definition limits the date scope to August 6, 2019.[1] The Class member time and payroll data can be supplemented to determine the exact number of Class members based on objective criteria. Ex. A, Brewer Tr. 135:17-136:11. This will not affect the numerosity analysis since two of the three warehouses (Logan and Burlington) did not open until after August 6, 2019. ECF No. 33 at ¶ 9 n.4.

The total square feet for each warehouse in New Jersey collectively exceeds 3.4 million square feet. Ex. B (Radwin Report), p. 3 (760,560 sq. ft for Perth Amboy, 1,732,684 sq. ft. for Logan, and 979,148 for Burlington).

---

[1] The New Jersey Supreme Court in *Maia v. IEW Constr. Grp.*, 257 N.J. 330 (N.J. 2024) held that New Jersey employees cannot recover damages for alleged unpaid wages prior to August 6, 2019.

**2.    Target Does Not Pay Class Members for Time Spent Walking in the Warehouse Prior to the Beginning of Their Scheduled Shift**

Plaintiff was required to enter the warehouse using her assigned badge. Ex. C, Rog. 5. The same is true for the Class members. Ex. D, Santiago Tr. 177:15-20; Ex. E, Powell Tr. 43:16-25; 47:10-24. Plaintiff and each Class member employed at the Logan warehouse passed through the same main entrance. The Perth Amboy and Burlington warehouses similarly have a single entrance class members passed through to begin their work day. Ex. D, Santiago Tr. 53:9-14; Ex. E, Powell Tr. 81:13-21; Ex. F, Ferreira Tr. 36:7-9; 38:1-3; Ex. G, Target Corporate Designee Dep. Tr. 75:10-14.

All Class members clock in and out the same way at a time clock using the same Target employee badge they use to enter the warehouse, the same MyTime System, and the same time clocks. Ex. E, Powell Tr. 43:11-15; 44:1-3; Ex. G, Target Corporate Designee Dep. Tr. 79:10-16, 22-25.

Class members are assigned to a "home department" in the warehouse. Ex. H, (Handbooks) at TARGET-SADLER 000103, 168, 209, 296 (████████████████████ ██████████████████████████████████████; 242 (████████████████████ ████████████████████████████); Ex. G, Target Corporate Designee Dep. Tr. 65:25-66:8. After badging in near the main entrance, Class Members are required to walk on a designated walkway to get to their assigned home department.

7

Ex. D, Santiago Tr. 154:1-155:2; Ex. I (Santiago Ex. 19 at TARGET-SADLER-97); Ex. E, Powell Tr. 73:22-74:22; Ex. G, Target Corporate Designee Dep. Tr. 77:2-6. Plaintiffs cannot walk aimlessly; they must use designated walkways to go to their assigned department locations. Ex. D, Santiago Dep. 81:2-6; 155:3-9; Ex. E, Powell Tr. 74:14-17; 120:1-13; 124:11-15. Ex. G, Target Corporate Designee Tr. 77:1-78:16.

All Class members must report to their assigned department at the start of their shift. Ex. E, Powell Tr. 73:22-76:16; 76:17-78:12; 78:13-79:5; 79:6-80:1; 80:2-1:5. Target generally pays them from the start of their shift. Ex. H, (Handbooks) at TARGET-SADLER 000295 (███████████████████████████████ ████████████). There is an exception for someone running late who clocks-in after the scheduled start time. In that situation Target pays the Class member from his/her clock-in time. Ex. E, Powell Tr. 116:22-117:4; Ex. G, Target Corporate Designee Dep. Tr. 72:3-15.

Target's clock in policy can be summarized as follows: if a Class member clocks in at their home department time clocks *at or before* their scheduled start time, she is paid from the scheduled start time, while Class members who clock in after their scheduled start time are paid from the time they clock in at the home department time clock. Ex. G, Target Corporate Designee Dep. Tr. 77:2-6. Target

does not pay Class members for the time they spend traveling to their time clock before their scheduled shift starts. *Id.* 75:4-9.

### 3. Target Does not Pay Class Member Post-Shift Time Within the Facility After Class Members Clock Out to Go Through Security Screening Measures

At the end of their shifts, Target directs Class Members to clock out using their "home department" timeclocks, located in their assigned departments. Ex. H (Handbooks) at TARGET-SADLER 000103, 168, 209, 296 (█████████████ ████████████████████████████████████; 242 (████████████████ ████████████████████████████████). After clocking out, Class members follow the same walkway they used at the beginning of their shifts to walk to the same main entrance they entered through at the beginning of their workday. Ex. E, Powell Tr. 120:1-13; Ex. D, Santiago Tr. 147:4-21; Ex. F, Ferreira Tr. 70:19-25; 73:17-20; Ex. G, Target Corporate Designee Dep. Tr. 70:22-71:3. Class members swipe their employee badge upon exiting. Ex. G, Target Corporate Designee Dep. Tr. 70:3-11 ("They scan a badge on the way out and that's -- so we actually, for safety reasons, we know who is in the building and who to make sure that people have also left as well. In the event of an emergency we would be able to track our team members."); 70:22-71:3; Ex. D, Santiago Tr. 176:17-25; 178:24-179:1; Ex. E, Powell Tr. 62:7-20.

After Target stops paying Plaintiffs it requires them to perform work by walking on certain designated pathways to undergo security screening measures, badge out, and exit through the main entrance. Ex. F, Ferreira 40:19-42:3 (metal detectors were used on Class members exiting the Perth Amboy warehouse during the class period); Ex. D, Santiago 55:4-15 (metal detectors were used on Class members exiting the Logan warehouse during the class period); Ex. E, Powell 44:12-45:10 ("security specialist" at the Burlington singular main entrance/exit that "engage[s] with team members entering and exiting the building").

Because Class members are not paid until their shift starts (at the earliest) and are only paid until they clock out at the timeclocks, they are necessarily not paid for any of this pre- or post-shift time. Ex. G, Target Corporate Designee Dep. Tr. 50:18-51:1, 53:1-8.

### 4. Target's Uniform Payroll and Time Data Shows the Amount of Time the Class Members are Actually Paid

Target produced data for both payroll and timekeeping that shows each workday the specific time that each class member clocked-in at the beginning of the shift, punched out at the end of the shift, and the amount of time for which they were actually paid. This accurate data is maintained in the same format for all Class members and is kept in the regular course of business. Ex. G, Target Corporate Designee Dep. Tr. 75:4-9. The data is capable of being sorted using a different start date. Ex. A, Brewer Tr. 136:1-12.

**5.    The Walking Time is Measurable for the Class Members**

The distance at issue in this case, as well as the corresponding time, is measurable. Indeed, Plaintiff's expert Dr. Robert G. Radwin inspected each facility and measured the intra-warehouse walking time. His time study is attached as Exhibit B. Dr. Radwin is a Professor of Industrial and Systems Engineering at the University of Wisconsin-Madison, focusing his research and teaching on the measurement and analytical methods for measuring and quantifying physical activities in the workplace. Dr. Radwin is a time study expert with over 35 years of experience developing, executing, and teaching about time studies, in addition to serving as a time study expert for plaintiffs, defendants, and the U.S. Department of Labor. *Id.* at pp. 2-3.

Dr. Radwin inspected the three warehouses in New Jersey and collected and analyzed the data to determine the amount of time spent on pre- and post-shift intra-facility travel by the Class members. *Id.* at p. 3. His analysis provides both the distance in feet from home department time clock areas to the singular entrance/exit of each warehouse, as well as the calculation of time spent in minutes pre- and post-shift to travel to and from the timeclocks. *Id.* at Table 2. To gather the data for his analysis, Dr. Radwin used the pathways led by Target representatives to the home department timeclock areas, which were often on designated paths with colored markings on the floor and with corresponding guardrails. *Id.* at pp. 4, 5, 7. Dr.

Radwin also calculated the square footage of each warehouse, which collectively span total over 3.4 million square feet. *Id.* at p. 3.

In addition to this expert evidence, Class Representative Plaintiff provided evidence of her estimated time spent completing the required pre- and post-shift activities: an average of 7 minutes a day to walk to the exit after clocking out and approximately 2-5 minutes to walk to the timeclocks to clock-in. Ex. J at Rog. 2. This evidence from Plaintiff is unrefuted by Target in discovery.

### 6. After Conducting Secret Time Studies of the Security Screening Measures, Target Made "Retro Payments" of 3 or 8 Minutes Per Shift to Class Members at the Perth Amboy and Logan Warehouses Depending on Location

On May 9 and 12, 2022, Target's lawyers from Seyfarth Shaw conducted time studies of the metal detectors at the Perth Amboy and Logan warehouses. Ex. C, Rog. 11. Target asserted that the two time studies, and underlying facts, were privileged and Magistrate Judge King agreed, over Plaintiff's objection. ECF No. 50 ¶ 1. Target refused to answer any discovery requests or questions at a Rule 30(b)(6) deposition regarding details of the secret studies, despite never obtaining a protective order. Ex. G, Target Corp. Designee Tr. 41:15-46:24.

Subsequently, Target made "Retro Payments" to Class members at those two locations. Ex. K at Rog. 14. Target paid Class members 3 minutes per shift at Perth Amboy, and 8 minutes of time per shift for Logan. *Id.* Target paid overtime in connection with the Retro Payments. *Id.* ███████████████████████

█████████████ Ex. L, TARGET-SADLER 408. Since time spent undergoing security screening is just as compensable as the time that employers require their employees to "be at his or her place of work" under N.J.A.C. 12:56-5.2(a), Target also must pay for the intra-facility time spent traveling to and from the timeclocks. In nearly all cases, this exceeds the 3 minutes per shift figure Target used for its Retro Payments. Ex. B, Radwin Report at Table 2.

## III.  ARGUMENT

### A.  The Proposed Class

Plaintiffs seek certification of a class of former and current Target employees defined as follows:

> All Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter.

### B.  Class Certification is Proper Under Rules 23(a)

To certify a class, a plaintiff must satisfy the four elements of Rule 23(a), as well as the Rule 23(b) requirements. The certification requirements under Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015).

A plaintiff has the burden of proving by a preponderance of the evidence that all requirements of Rule 23 are met. *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *In re Hydrogen Peroxide Antitrust Litig.*, 552

F.3d 305, 307 (3d Cir. 2009). Critically, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *In re Hydrogen Peroxide*, 552 F.3d at 318. Here, as reflected by the record, Plaintiffs have established all the requirements set forth in Rule 23(a). Accordingly, class certification is appropriate.

### 1.    The Proposed Class is Sufficiently Numerous

The first requirement a plaintiff must meet under Rule 23(a) is numerosity. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  There is not a specific threshold number needed to satisfy the numerosity requirement—instead, the individual facts of a given case must be examined. *Casco v. Ponzios RD, Inc.,* 2018 U.S. Dist. LEXIS 73869, at *8 (D.N.J. Apr. 29, 2018) (citing *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330, (1980)). In the Third Circuit, a plaintiff who demonstrates that the potential number of plaintiffs exceeds 40 satisfies the numerosity requirement. *See In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016)

Here, Target has acknowledged that the number of class members is in the thousands. Target acknowledges that in the time period from November 30, 2016 until January 2023, it employed 8,104 hourly, non-exempt employees. ECF No. 1 ¶ 13 (Removal Notice). While the class period now encompasses the time from August 6, 2019 forward, numerosity is still satisfied. Indeed, in April of 2024, a Target

14

human resources employee testified in her deposition that upwards of 1,100 warehouse employees *currently* work at the Logan Target location alone. Ex. D, Santiago Tr. 45:23-46-1. Plaintiff has met the numerosity requirement of Rule 23(a)(1).[2]

### 2.    Plaintiffs' Claims Present Questions of Law and Fact Common to the Class

Commonality exists under Rule 23(a) "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Reyes v. Netdeposit, LLC*, 802 F.3d at 486. Importantly, "[c]ommonality does not require perfect identity of questions of law or fact among class members." *Id.* Rather, "a court's focus must be on whether the defendant's conduct is common as to all class members." *Id.* Moreover, the commonality "bar is not a high one," *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Plaintiffs have met this low bar.

Here, an overarching threshold question of law unites the class: whether the time spent by class members in the same pre- and post-shift activity constitutes "hours worked" under New Jersey law. This common question alone is enough to

---

[2] Target has not supplemented its discovery responses with payroll and time data beyond January 2024, despite the fact that the discovery period closed June 17, 2024. An analysis of the data produced by Target to date identifies a total of 10,151 class members between the three locations. On June 12, 2024, Plaintiffs' counsel requested this supplement under Rule 26(e) but have received no response from Target's counsel. This outstanding damages discovery will be necessary for trial.

satisfy Rule 23(a)(2). *See Reyes*, F.3d at 486 ("even a single common question will do.") (citing *Wal-Mart Stores, Inc. v. Dukes*, 56 U.S. 338, 359 (2011)).

Further, "Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement because the former, although similar, 'is far more demanding than the latter.'" *Renig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d. Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). As set forth below in Section C.2, Rule 23(b)(3)'s predominance requirement is satisfied. In satisfying predominance, Plaintiff has also established that a single common question of law unites the class: whether the time spent engaging in pre- and post-shift intra-facility activity is compensable under the NJWHL. Accordingly, Rule 23(a)(2) is satisfied.

### 3. Plaintiff's Claims are Typical of Those of the Class Members

Typicality is established if a claim "arises from the same event or practice of course of conduct that gives ruse to the claims of the class members, and if it is based on the same legal theory." *Baby Neal v. Casey*, 43 F.3d at 58. The typicality requirement is "is intended to prevent certification when 'the legal theories of the named plaintiffs potentially conflict with those of the [class] absentees." *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 133 (3d Cir. 2022) (citations omitted). The threshold for satisfying the typicality requirement is low. *Barr v. Harrah's Entertainment, Inc.*, 242 F.R.D. 287, 292 (D.N.J. 2007). The question for the Court

is not whether the plaintiff is typical but whether the plaintiff's claims are typical of the class member's claims. This suggests the plaintiff's incentives align with, rather than conflict with, those of the class. *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006). "In instances where it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002).

Here, typicality is established due to the uniform treatment of Plaintiff and the class members by Target. Plaintiff and all Class members are subject to the same rules, policies, and procedures enacted by Target. Witnesses employed by Target at all three subject warehouses indicated that the same policies regarding reporting to an assigned department, clocking in and out in accordance with Target's policies and procedures, and safety rules related to intra-facility travel apply uniformly to all employees, regardless of warehouse location.

Further, there is no conflict since the ***fact of damage*** regarding the wage claims is identical even if the individual damage amounts vary. Plaintiff and the Class members share the interest of proving that Target has violated New Jersey wage and hour law when it failed to pay Plaintiff and Class members for all time that Target required its employees to "be at his or her place of work," as required by N.J.A.C. 12:56-5.2(a). Plaintiff clearly demonstrated with common evidence that

she and the class members were not paid for the time spent walking from the entrance to their timeclock before each shift, on the one hand, and from the timeclock to the security screening measures at or near the exit after their shift on the other. There were no policies, practices, or procedures unique to Plaintiff. All Progression Team members, including Plaintiff, were paid in the same manner. Ex. G, Target Corporate Designee Tr. 72:3-15; Ex H at TARGET-SADLER000295 (█████████████████ ███████████████████████).

Plaintiff was harmed in the same way and her claims are based on the same legal theory as all members of the class. *See Zinberg v. Washington Bancorp, Inc*, 1385 F.R.D. 397, 407 (D.N.J. 1990). If Plaintiff wins on the merits, all Class members will be entitled to regular and overtime wages owed to them under the NJWHL and the New Jersey wage and hour laws pled in the Amended Complaint. The typicality requirement of Rule 23(a)(3) is satisfied.

### 4.    Plaintiff and Class Counsel Will Fairly and Adequately Represent the Class

Plaintiff and Class Counsel will fairly and adequately represent the Class. "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d. Cir. 1975). All in all, "this requirement is to ensure that there are not conflicts of interest between the named parties and

those they seek to represent." *Casco*, 2018 U.S. Dist. 73869, at *11 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 625).

*First*, Plaintiffs' attorneys are qualified, experienced, and able to conduct this litigation. Plaintiffs' attorneys are knowledgeable in matters of employment law and class actions. *See, e.g.*, *Hall v. Adelphia Three Corp.*, No. 1:21-cv-01106 (D.N.J. 2024) (approving $900,000 class settlement for wage violation under FLSA and New Jersey Law); *Caddick v. Tasty Baking Co.*, No. 2:19-cv-02106, 2021 U.S. Dist. LEXIS 206991, at *13 (E.D. Pa. Oct. 27, 2021) (approving $3.15 million class settlement for wage and hour claims under New Jersey, Pennsylvania, Delaware, and Maryland law and FLSA); *Crawford v. FHG Realty Urban Renewal LLC*, (D.N.J. Mar 15, 2019) (approving $525,000 class settlement for wage violation under FLSA and New Jersey law); *Carroll v. Stettler*, No. 10-2262, 2011 U.S. Dist. LEXIS 121171, at *8-9 (E.D. Pa. Oct. 19, 2011) (appointing Charles J. Kocher as class counsel and certifying class).

*Second*, there is no evidence of any conflicts of interest between Plaintiff and members of the Class. Plaintiff shares the same claims as the other Class members, and each Class member will benefit from this litigation. In fact, Plaintiff has worked with her counsel to advance the interests of the class by: (i) sharing information with her counsel regarding Target's unlawful practices; (ii) responding to Target's discovery requests; and (iii) testifying at her deposition. As such, Plaintiff has

demonstrated her commitment to prosecuting this case on behalf of the proposed Class. There are no conflicts of interest.

Accordingly, Rule 23(a)(4) is satisfied.

### C.    Class Certification is Proper Under Rule 23(b)(3)

In addition to the requirements of Rule 23(a), Rule 23(b)(3) provides two additional requirements: (1) common questions of law or fact must "predominate over any questions affecting only individual members" and (2) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Under Rule 23(b)(3), certification is proper if: "[T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

## 1.    The Proposed Class is Ascertainable

A plaintiff must also propose a class definition that is "readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics, Inc.*, 256 F.R.D. 437, 438 (D.N.J. 2009) A plaintiff seeking certification under Rule 23(b)(3) must prove by a preponderance of the evidence that the proposed class is ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (citing *Carrera v. Bayer Corp.*, 727 F.3d 300, 355 (3d Cir. 2013)).

Both requirements are met here. The proposed Class is defined with objective criteria:  All Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter. Indeed, this was the same class definition approved by the Eastern District of Pennsylvania in *Davis v. Target*. Ex. M, *Davis*, 2023 U.S. Dist. LEXIS 214818, at *18. Additionally, Target maintains and has produced payroll and timekeeping records of its Employees, so there is a reliable and administratively feasible mechanism for the inclusion of class members within the Class. *See Ramcharan v. A.F.L. Quality, Inc.*, No. 1:12-cv-

07551, 2014 U.S. Dist. LEXIS 124441, at *12 (D.N.J Sep. 5, 2014) (class is ascertainable based upon available payroll data).

### 2.    Common Issues Predominate

The "predominance test asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact. Predominance begins, of course, with the elements of the underlying cause of action." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370 (3d Cir. 2015). A court must look to the elements of the claim to assess whether the class members can prove their claims with evidence common to the class rather than individual to its members. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156 (3d Cir. 2023). When common issues overwhelm individual ones, predominance is satisfied. *Neale,* 794 F.3d at 371.

Here, as in *Davis v. Target*, predominance is satisfied because "the central question of whether the relevant time is categorically compensable predominates over individual differences in liability or damages." *Davis*, 2023 U.S. Dist. LEXIS 214818, at *15. The *Davis* Court aptly framed the analysis on this inquiry:

> Mr. Davis argues that the predominance requirement is satisfied in this case. Target has a written and undisputed policy that goes back to at least the start of the window for the proposed class that the employees will not be paid for the walking time at issue here. Mr. Davis contends that that the proposed class members must be compensated for this time under *Heimbach*, and Target disagrees as a matter of law. ***This is undoubtedly a common, unifying, and overwhelmingly significant question in this case, and it invites textbook application of class resolution***.

*Davis*, 2023 U.S. Dist. LEXIS 214818, at \*11 (emphasis added).

Similarly, in this case, the same fundamental common issue predominates, i.e. whether the time spent by Class members in the same pre- and post-shift activity constitutes "hours worked" under the NJWHL, making it compensable. Target contends that the answer is no. Ex. G, Target Corp. Designee at 75:4-9. While Plaintiffs disagree, the resolution of this common question applies to all Class members equally, and can be decided by the Court in one fell swoop, making certification appropriate. *Univ. of P.R. Ret. Sys. v. Lannett Co.*, No. 21-3150, 2023 U.S. App. LEXIS 9143, at \*11 (single theory of liability tied to a single theory of damages satisfies predominance analysis.). If the time in question here is compensable for Plaintiff under New Jersey law, it is compensable for all Class members. "Common proof will be at the center of both the liability and damages determinations, with individualized issues appearing to take a secondary — and calculations-only — role." *Davis*, 2023 U.S. Dist. LEXIS 214818, at \*17.

The Supreme Court's analysis of this issue in *Tyson Foods v. Bouapheko* is helpful. There, a finding of predominance was upheld where hundreds of workers' claims hinged on the common legal issue of "whether time spent donning and doffing the required protective gear is compensable work under the FLSA." *Tyson Foods v. Bouapheko*, 577 U.S. 442 (2016). The Supreme Court held that the common legal issue of whether the time was compensable predominated more particularized

issues including the amount of time individual workers spent donning and doffing their specific gear. *Id.* 452-462. The same question of law is at issue here. The differing amounts of time it took class members to travel from the entrance of their distribution center to their respective time clocks does not preclude predominance. And the potential variance in the damages owed to each class member does not prevent a finding of predominance. *See Neale*, 794 F.3d at 375-376. Notwithstanding variances in the time spent by each class member and the potential damages owed to each class member, one common issue encompasses all the Class members: whether the time spent engaging in pre- and post-shift intra-facility activity is compensable under the NJWHL. This question predominates over any ancillary individual questions of law or fact.

Importantly, the predominating question here stems directly from Target's policy to only pay class members for the time between their scheduled shift start to the time they clock-out at the end of their shifts. Ex. G Target Corp. Designee at 75:4-9. This common policy is included in its employee handbook and is applicable to all Class members, a fact admitted by Target's 30(b)(6) corporate designee witness. Ex. G, Target Corp. Designee 75:4-9; 64:14-65:3; Ex. H (Target Corp. Designee Dep. Exhibit 4). This common policy alone, and the consequences of same, necessarily satisfies the predominance requirement. To be sure, the common policies applicable to Class members go beyond Target's payment practices. As discussed

above, at each New Jersey warehouse, Class members are required to enter through a single point of entry and are required to use designated walkways to get to their assigned home department. Class members are also required to use these designated walkways to travel from their timeclocks upon clock-out to go through Target's security screening measures and also to badge out and exit by using the main entrance, all by Target's design and for its benefit. Both segments of pre- and post-shift time constitutes "hours worked" since it encompasses all time that employers require their employees to "be at his or her place of work."  N.J.A.C. 12:56-5.2(a).

The uniform application of these policies to all class members further establishes the predominance requirement. *See Hargrove v. Sleepy's LLC*, No. 22-2040, 2023 U.S. App. LEXIS 14553 at *7 (3d Cir. June 12, 2023) ("Common corporate policies … carry great weight for certification purposes, and **predominance is rarely defeated in cases where such uniform policies exist.**") (emphasis added) (quoting *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 844 (9th Cir. 2019)).

Finally, Plaintiffs have the ability to use common evidence to prove class members' claims and the corresponding damages as a matter of just and reasonable inference. Target's own payroll and time records capture the clock-in and clock-out times and the amount Target paid them. Target also maintains data regarding when class members entered their respective facilities. Dr. Radwin's time study calculates

25

the time it took to travel from the entrance of the facilities to each home department's time clock on the one hand, and from the time clocks to the exit on the other. Ex. B. Target's common written policy requires employees to clock in at their assigned home department. Ex. H, (Handbooks) at TARGET-SADLER 000103, 168, 209, 296 (██████████████████████████████████; 242 (████

██████████████████████████████████; Ex. G, Target Corporate Designee Tr. 65:25-68:6. This allows Plaintiff to demonstrate the amount of time Target failed to pay Plaintiff and Class members for the time they were required to be present at the Target facility prior to and after the conclusion of their shifts. This common evidence will suffice to prove the time spent by Plaintiff and class members is compensable on a class-wide basis.

The question of whether that time was compensable under the NJWHL applies equally to all members of the Class and can be adjudicated in one broad stroke. Therefore, Plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

### 3.    Class Action Superiority

In order to establish the superiority prong, Plaintiffs "must demonstrate that resolution by class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results." *King Drug Company of Florence Inc. v. Cephalon, Inc.,* 309 F.R.D. 195, 214 (E.D.Pa. 2015)

(citing *Amchem*, 521 U.S. at 615). Rule 23(b)(3) identifies four (4) factors pertinent to the superiority determination: (1) the interest of individual class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any previously commenced litigation concerning the controversy; (3) the desirability or undesirability of concentrating the litigation of the claims in a single forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). These factors weigh heavily in favor of class treatment.

**First**, there is little interest for individual class members in controlling the prosecution of separate actions. While the ***aggregate*** damages of the class are significant, the amount of unpaid regular and overtime wages to each individual in the Class may be relatively small. Indeed, Target's Notice of Removal contemplates potential damages in excess of $7.3 million. ECF No. 1 (Removal Notice) ¶ 25. This renders individual litigation economically infeasible, as the costs would likely outweigh the potential recovery. *See, e.g.*, *In re Wafarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (finding superiority where each class member had a "small claim in relation to the cost of prosecuting a lawsuit"); *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015).

**Second**, Plaintiff is not aware of any Class members that have commenced individual actions concerning this controversy.

**Third**, concentrating these claims in a single forum is desirable because it will avoid the risk of inconsistent judgments and inefficiencies attendant to a multiplicity of proceedings. Indeed, because all events occurred in New Jersey and all class members were or are employed in New Jersey, there is no disadvantage to a single, consolidated class proceeding. Further, this Court provides a fair and convenient forum for this litigation for Plaintiffs, Defendant, and the proposed Class Members because it promotes judicial economy while providing a local forum for the parties to assert their rights. *See Casco*, 2018 U.S. Dist. LEXIS 73869, at *13. In fact, class treatment may even serve beneficial to Target because they must only "defend against plaintiff's allegations in one proceeding" and therefore not "fear individual actions with respect to the same issues ad infinitum." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 489, (W.D. Pa. Nov. 5, 1999). The relative costs for all parties in proceeding in this forum are minimized by certifying the Class.

**Fourth**, there are no foreseeable difficulties in managing this case a class action. The questions of whether the intra-facility walking time is compensable and whether Target is liable for same is common to the class, and the identification of class members and calculation of damages can easily be accomplished through common evidence. If Target is liable to Plaintiff for unpaid regular and overtime wages, it is liable to all class members for same.

As the *Davis* Court reasoned:

28

> We agree with Mr. Davis that class action treatment is superior to the alternative here, primarily because of the large class size, the modest individual claims, and the largely unifying legal issues and common proof. Target is wrong about the need for individual trials for all the same reasons already discussed above regarding predominance. Common proof will be at the center of both the liability and damages determinations, with individualized issues appearing to take a secondary — and calculations-only — role.

Ex. M, *Davis*, 2023 U.S. Dist. LEXIS 214818, at *17-18. *Davis* has been favorably cited to grant class certification in other walking time cases. *See Alfonso v. FedEx Ground Package Sys.*, 2024 U.S. Dist. LEXIS 40928, at *44 (D. Conn. Mar. 8, 2024). The same analysis is applicable here under the same facts, just under New Jersey law.

Thus, the superiority requirement of Rule 23(b)(3) is established.

### 4.    Rule 23(g) Appointment of Class Counsel is Warranted

When a court certifies a class, it must appoint class counsel. Fed. R. Civ. P. 23(g).  The factors it must consider are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id.*

As set forth above, McOmber McOmber & Luber, P.C. should be appointed as Class Counsel as it has diligently investigated and pursued the claims in this

litigation and has extensive experience managing and litigating complex class actions such as this one. Notably, the undersigned was Class Counsel in the $3.15 million Tastykake settlement in the Eastern District of Pennsylvania (*Caddick v. Tasty Baking Company*, 2:19-cv-02106), as well as in *Hall v. Adelphia Three Corp.*, 21-cv-1106 presided over by Judge O'Hearn.

## IV.    CONCLUSION

For the reasons above, Plaintiffs request that the Court certify the Class; appoint Plaintiff Krystal Sadler as Class Representative for the Class; appoint the law firm of McOmber McOmber & Luber, P.C. as Class Counsel; and authorize the dissemination of Class notice. Ex. N. A proposed order follows.


Dated: June 21, 2024                    Respectfully submitted,

                                        */s/ Charles J. Kocher*
                                        Charles J. Kocher, Esq. (NJ ID 016952004)
                                        McOMBER McOMBER & LUBER, P.C.
                                        50 Lake Center Drive, Suite 400
                                        Marlton, NJ 08053
                                        (856) 985-9800
                                        cjk@njlegal.com

                                        *Attorneys for Plaintiff and the Putative Class*