# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **KRYSTAL SADLER** *on behalf of herself, individually, and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>**TARGET CORPORATION** *et. al*,<br><br>Defendants. | Civil Action<br>No. 23-00030<br><br>**OPINION** |

**APPEARANCES:**

Matthew A. Luber
Tyler J. Burrell
Charles Joseph Kocher
Williams L. Carr
MCOMBER MCOMBER & LUBER, P.C.
39 E. Main Street
Marlton, NJ 08053

    *On behalf of Plaintiff Krystal Sadler.*

Jacqueline R. Barrett
OGELTREE DEAKINS
1735 Market Street
Suite 3000
Philadelphia, PA 19103

    *On behalf of Defendant Target Corporation.*

**O'HEARN, District Judge.**

### INTRODUCTION

This case comes before the Court on Plaintiff Krystal Sadler's ("Plaintiff") Motion to Certify Class. (ECF No. 56). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons below, the Court will **GRANT** Plaintiff's Motion to Certify Class.

### I. FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

This is a class action lawsuit commenced by Plaintiff, individually and on behalf of other similarly situated hourly employees, alleging that Defendant Target Corporation ("Defendant") violated the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56 *et seq.*, and the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, *et seq.*, by failing to pay them for all hours worked, including (1) pre-shift and post-shift time spent traveling to their assigned departments to clock in and out; and (2) time spent undergoing mandatory security screenings. (Compl., ECF No. 33 at ¶¶ 1–2).

Defendant operates three distribution centers in New Jersey—located in Burlington, Logan, and Perth Amboy—which collectively spans over two million square feet. (*Id.* at ¶ 9). Plaintiff alleges that all hourly, non-exempt warehouse employees at these facilities, including herself, were subject to uniform policies and practices that required them to engage in unpaid work-related activities before and after their shifts. (*Id.* at ¶¶ 2, 11–13). Specifically, employees

---

[1] Because the Court must make factual determinations to support Rule 23 findings by a preponderance of the evidence standard, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469, 484 (3rd Cir. 2015), the Court does not accept the factual allegations of the Complaint as true for the purpose of this Motion and will make all necessary factual determinations, *Marcus v. BMW of N. Am., L.L.C.*, 687 F.3d 583, 591 (3d Cir. 2012) ("Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met.").

were required to (1) badge into the facility upon arrival, (2) undergo mandatory security screenings, (3) walk long distances to reach their assigned workstations to clock in, and (4) at the conclusion of their shifts, clock out and walk long distances to the facility's exit while undergoing additional security screenings. (*Id.* at ¶¶ 2, 11–13, 18).

Plaintiff worked at Defendant's Logan warehouse as a non-exempt hourly worker from September 8, 2022, to November 22, 2022. (*Id.* at ¶ 4). During her employment, Plaintiff alleges that she was not compensated for the time spent on these activities, which she contends are compensable under the NJWHL. (*Id.* at ¶¶ 26–35). She asserts that this practice violated state wage laws by underreporting hours worked and failing to pay the proper regular and overtime wages. (*Id.*).

Defendant denies Plaintiff's allegations, arguing that the activities in question are not compensable under New Jersey law. (Am. Answer, ECF No. 34). Nonetheless, Defendant has acknowledged that its records identify over 8,100 hourly, non-exempt workers who may be included in the putative class, which as defined initially spanned from November 30, 2016, to the present, (Notice of Removal, ECF No. 1, ¶ 13), but was later modified to span from August 6, 2019, to the present.

Plaintiff filed her Complaint on November 30, 2022, (ECF No. 1-1). Defendant removed the action to this Court on January 4, 2023, (ECF No. 1). On August 30, 2023, Plaintiff filed an Amended Complaint. (ECF No. 33). On June 21, 2024, Plaintiff filed the Motion to Certify Class presently before this Court, (ECF Nos. 56–59), which Defendant opposed on July 17, 2024, (ECF No. 66). Plaintiff filed a reply on July 31, 2024. (ECF No. 71). The proposed class sought via Plaintiff's Motion includes:

> All Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter.

(Pl. Br., ECF No. 58 at 13).

## II. **LEGAL STANDARD**

The requirements for class certification are set forth in Federal Rule of Civil Procedure 23. Under Rule 23, the moving party bears the burden of showing that the putative class satisfies the four prerequisites of Rule 23(a), and that the action can be maintained under at least one subsection of Rule 23(b). *See Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184–84 (3d Cir. 2001); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).

The four prerequisites of Rule 23(a) are satisfied when:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). "Commonly referred to as numerosity, commonality, typicality, and adequacy of representation, these four requirements are 'meant to assure both that the class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances.'" *Banda v. Corzine*, No. 07–4508, 2007 WL 3243917, at *15 (D.N.J. Nov.1, 2007) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).

Upon satisfying Rule 23(a), the moving party must then show that the putative class falls under at least one of the subsections of Rule 23(b). *Id.* at *18. In the present case, Plaintiff brings claims under Rule 23(b)(3), which requires that "[(i)] questions of law or fact common to class members predominate over any questions affecting only individual members, and [(ii)] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considerations in a Rule 23(b)(3) determination include,

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Courts deciding whether to certify a class under Rule 23 must undertake a "rigorous analysis" and consider all relevant evidence and arguments presented by the parties. *See In re Hydrogen Peroxide Antitrust Lit.*, 552 F.3d 305, 309–10 (3d Cir. 2008). Decisions to certify a class require "findings by the court, not merely a threshold showing" by the moving party, that the requirements of Rule 23 are met. *Id.* at 307. The Court "must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits," *id.*, and those factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence, *Reyes v. NetDeposit L.L.C.*, 802 F.3d 469,484 (3rd Cir. 2015); *In re Ford Motor Co. Ignition Switch*, 174 F.R.D. 332, 339 (D.N.J. 1997) (finding that it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied.").

### III. DISCUSSION

Plaintiff moves for class certification on behalf of a class of hourly workers who, since August 6, 2019, have been employed by Target under the NJWHL and NJWPL. (Pl. Br., ECF No. 58 at 1). Plaintiff is challenging Target's company-wide policy of failing to pay hourly employees for time associated with: (1) pre-shift travel within the distribution center to employees' assigned departments; and (2) post-shift travel time to exit through Target's security screening measures. (*Id.* at 5). Defendant maintains that Plaintiff cannot demonstrate that her claims and defenses at issue predominate and that a class action is superior to the usual course of conduct. (Def. Br., ECF No. 66 at 18–19). For the reasons that follow, the Court will **GRANT** Plaintiff's Motion to Certify Class. (ECF No. 56).

### A. Ascertainability

A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). Further, "a plaintiff [need not] be able to identify all class members at class certification—instead, a plaintiff need only show that class members can be identified." *Id.* (internal quotation omitted).

Plaintiff proposes the class as

> All Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter.

(Pl. Br., ECF No. 58 at 13). Defendant does not specifically address this prong and thus implicitly does not contest it. Nevertheless, given the proposed class—All Progression Team Members who have been employed as hourly, non- exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter—and the availability of payroll and timekeeping records, a class of employees is easily ascertainable. *See Ramcharan v. A.F.L. Quality, Inc.*, No. 12-7551, 2014 WL 4388579, at *5 (D.N.J. Sept. 5, 2014) (noting payroll data at the class certification stage permits the class members to be objectively ascertained by providing evidence of who was employed by the defendant as of the relevant date). The Court thus finds that Plaintiff has satisfied the ascertainability requirement of Rule 23(a).

### B. Numerosity

There is no certain minimum number of plaintiffs required in order to bring a class action suit. *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001). However, "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* at 226–27. Here, Plaintiff maintains that Target acknowledged in its

Notice of Removal that it employed over eight thousand hourly non-exempt employees in the time period between 2016 and 2023, the initial time period identified in the Complaint. (Pl. Br., ECF No. 58 at 14; Notice of Removal, ECF No. 1, ¶ 13). Despite the class period now having been narrowed to encompass the time from August 6, 2019 forward, Plaintiff maintains numerosity is still satisfied because a Target human resources employee testified that upwards of 1,100 warehouse employees currently work at the Logan Target location alone. (Pl. Br., ECF No. 58 at 15). Though Target summarily maintains that Plaintiff cannot meet her burden to show numerosity, the undisputed testimony of the Target employee that it currently employees over 1,000 employees at the Logan location, just one of the three locations at issue in this case, coupled with Target's admission in its Notice of Removal that Target employed over 8,000 employees from 2016 to 2024, is more than sufficient to show that the proposed class far exceeds forty. As such, the Court finds that Plaintiff has satisfied the numerosity requirement of Rule 23(a).

### C. Superiority

In the superiority inquiry, courts must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd sub nom. Windsor*, 521 U.S. 591 (internal quotations omitted). Courts should also consider four nonexclusive factors: "(1) the interest of individual members of the class in controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management difficulties likely to be encountered in pursuing the class action." *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

Here, the Court finds that judicial efficiency weighs in favor of certifying the class. In this case, each putative class member's case turns on whether their walking time constitutes hours

7

worked thus making class management of potentially thousands of individuals highly favorable to individual trials. Moreover, a similar class was certified in *Davis v. Target Corporation*, No. 23-89, 2023 WL 8373162 (E.D. Pa. Dec. 1, 2023). There, the Court determined that class action treatment was superior given, like here, "the large class size, the modest individual claims, and the largely unifying legal issues and common proof." *Id*. at *6. The Court explained that "[c]ommon proof will be at the center of both the liability and damages determinations, with individualized issues appearing to take a secondary —and calculations-only — role." *Id*. As for fairness, the Court in *Davis* noted that the defendant was free to dispute how much recovery was warranted and how many employees were eligible for compensation. *Id*. The same is true here. Defendant's opposition largely focuses on issues that, down the road, may create readily identifiable and manageable sub-classes (for example, based upon the facility at which they worked) and/or exclude some employees from eligibility, but those issues do not overcome superiority and are more appropriately addressed later. Therefore, the Court finds that Plaintiff has satisfied the superiority requirement of Rule 23(b)(3).

### D. Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Windsor*, 521 U.S. at 625. Two inquiries must be made to determine adequacy: the first looks at the qualifications of the counsel that is representing the class and the second looks at whether there are conflicts of interest between the representatives and the classes. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 602 (3d Cir. 2009).

Here, Plaintiff represents that her counsel are "qualified, experienced, and able to conduct this litigation" and points to cases in which they have previously been approved to represent classes. *See, e.g.*, *Hall v. Adelphia Three Corp.*, No. 21-01106 (D.N.J. Jan. 31, 2023) (approving

$900,000 class settlement for wage violation under FLSA and New Jersey Law); *Caddick v. Tasty Baking Co.*, No. 19-02106, 2021 WL 4989587, at *2 (E.D. Pa. Oct. 27, 2021) (approving $3.15 million class settlement for wage and hour claims under New Jersey, Pennsylvania, Delaware, and Maryland law and FLSA); *Crawford v. FHG Realty Urban Renewal LLC*, No. 16-7797 (D.N.J. Mar 15, 2019) (approving $525,000 class settlement for wage violation under FLSA and New Jersey law). Defendant does not contest this issue. The Court agrees.

As to potential conflicts, Defendant spends much time in its brief focusing on Plaintiff's expert and related opinions as to the merits of the Plaintiff's claims. (Def. Br., ECF No. 66 at 13–16, 25–26, 34). At bottom, Defendant summarily argues that Plaintiff is not an adequate representative because "she has not spoken with an expert, nor has she discussed her claims with anyone at the Logan distribution center where she worked or employees at the Perth Amboy and Burlington distribution centers." (Def. Br., ECF No. 66 at 34–35). Not only does Plaintiff represent that they have an expert, but she also notes that expert reports were not yet due at the time this motion was filed. (Pl. Reply Br., ECF No. 71 at 3–6). Moreover, Defendant's contention regarding alleged criticisms with respect to the retention of experts and/or the expert's opinions, or alleged deficiencies in representation in this regard are simply irrelevant at this stage and does not in any way suggest that there is a conflict between Plaintiff and the class in any way. As such, the Court finds that Plaintiff can satisfy the adequacy of representation requirement of Rule 23(a).

### E. Commonality, Typicality, and Predominance

Because both commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," courts may consider them

together. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Courts may also consider predominance at this junction "[b]ecause [Rule] 23(b)(3)'s predominance requirement incorporates the commonality requirement." *Georgine*, 83 F.3d at 626.

First, to meet the commonality requirement, Plaintiff must show that she "share[s] at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough*, 589 F.3d at 597.

Second, to determine whether Plaintiff has demonstrated typicality, courts ask "whether the named plaintiff's claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (citation omitted); *see also Stewart*, 275 F.3d at 227 ("The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members."). The Third Circuit has stated the following regarding typicality:

> [T]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Schering Plough*, 589 F.3d at 599. "[I]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002) (citation omitted), *aff'd* 84 F. App'x 257 (3d Cir. 2004). "A claim 'framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice.'" *St. Louis Chiropractic v. Fed. Ins. Co.*, No. 07-03110, 2008 WL 4056225, at *7 (D.N.J. Aug. 26, 2008) (quoting *Baby Neal*, 43

10

F.3d 48, 63 (3d Cir. 1994)). A defendant, on the other hand, can challenge typicality by proving the named plaintiff or small subclass is "subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006); *see Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974).

Third, a plaintiff proceeding under Rule 23(b)(3) must also show "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." F.R.C.P. 23(b)(3). The "focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments. Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). This is particularly so where the inquiry necessarily focuses on what defendants did rather than what class members did, so the proof for these issues will not vary among class members. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2003).

Here, Plaintiff allege that Defendant does not pay the class members for the time they spend traveling to their time clock before their scheduled shift starts and the post-shift time within the facility after class members clock out to go through security screening measures. (Pl. Br., ECF No. 58 at 8–9). At the outset, Plaintiff makes a strong case for the commonality and typicality of the class members. All putative class members were employed by Defendant as hourly workers and the unifying and overriding legal question is whether the time spent by the class members in pre- and post-shift activity constitutes hours worked. Here, clearly, resolution of the class claims requires the Court to determine whether this time should have been compensated. *See Davis*, 2023 WL 8373162, at *3 (finding commonality prong met given that "the class members share the important common question of whether time spent walking from the building entrance to the time clocks and back again is compensable under the [Pennsylvania Minimum Wage Act]").

Though Defendant argues that there are multiple subsidiary questions presented by the evidence thus far such as what time clocks each potential class member used, which paths class members took between entrances and time clocks, whether they were subject to security screening, and if so what type of screening, and whether some received supplemental payments covering some of this time, these issues go to individual damages which does not preclude certification. *See e.g.*, *Alfonso v. FedEx Ground Package Sys.*, No. 21-01644, 2024 WL 1007220, at *14 (D. Conn. Mar. 8, 2024) ("The Court agrees with Plaintiffs that the factual matter of the time spent in security and walking time generally goes to damages, and there cannot 'alone' preclude certification."). Indeed, any such differences between class members can be addressed by individualized damages or, as noted above, if needed, the creation of sub-classes based upon some of these issues after they are better developed in the record. *See Davis*, 2023 WL 8373162, at *5 (E.D. Pa. Dec. 1, 2023) (finding the predominance prong satisfied when "the central question of whether the relevant time is categorically compensable predominates over individual differences in liability or damages."); *Pichardo*, 2016 WL 5338551, at *4 (citing *Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 126 (S.D.N.Y. 2014) ("[T]he Second Circuit has found that individualized calculations of damages do not defeat the predominance requirement.")). In *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016), the Supreme Court approved of a class certification that included some discrepant liability and damages results between different employees who worked different amounts of time given that there were central questions that predominated. Additionally, like in *Davis*, which involved a similar proposed class involving walking time, here, the central issue involving Defendant's policy regarding walking time predominates over any issues of individual damages. For these reasons, class certification is warranted.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Certify Class, (ECF No. 38), is **GRANTED** pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). An appropriate Order will be entered.

*Christine P. O'Hearn*
**Christine P. O'Hearn**
**United States District Judge**