# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRYSTAL SADLER, individually and on behalf of all similarly situated individuals, | Civ. No. 1:23-cv-00030-CPO-SAK |
| *Plaintiffs,* | |
| *v.* | Jury Trial Demanded |
| TARGET CORPORATION, | |
| *Defendant.* | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT TARGET CORPORATION'S <u>MOTION FOR RECONSIDERATION</u>

# **Table of Contents**

I.      INTRODUCTION ........................................................................1

II.     Factual Background ..................................................................3

        A.      Common Evidence Already Considered by the Court ........................3

                i.      Target Does Not Pay Class Members for Time Spent Walking in the Warehouse Prior to the Beginning of Their Scheduled Shift ...............................................................................3

                ii.     Target Does not Pay Class Member Post-Shift Time Within the Facility After Class Members Clock Out to go Through Security Screening Measures ......................................................5

                iii.    The Walking Time is Measurable for the Class Members ........6

                iv.     The Court's Order Granting of Class Certification ..................7

III.    ARGUMENT .............................................................................7

        A.      Legal Standard .............................................................7

        B.      The District Court Engaged in the Necessary "Rigorous Analysis" Required by *Dukes* ...................................................8

        C.      The Court's Reliance on *Davis* was proper .......................................12

        D.      Target's Restatement of its Common Defenses Still do not Pose a Barrier to Class Certification .............................................13

IV.     CONCLUSION ........................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfonso v. FedEx Ground Package Sys.*,
   No. 3:21-cv-01644, 2024 U.S. Dist. LEXIS 40928 (D. Conn. Mar.
   8, 2024) ..................................................................................................14

*Bowers v. NCAA*,
   130 F. Supp. 2d 610 (D.N.J. 2001) ........................................................8

*Davis v. Target Corp.*,
   Civ. No. 23-89, 2025 U.S. Dist. LEXIS 28957 (E.D.Pa. Feb. 19,
   2025) ...............................................................................................*passim*

*Hargrove v. Sleepy's LLC*,
   974 F.3d 467 (3d Cir. 2020) ..................................................................11

*Hargrove v. Sleepy's LLC*,
   No. 22-2040, 2023 U.S. App. LEXIS 14553 (3d Cir. June 12,
   2023) ........................................................................................................9

*Hassine v. Simon's Agency, Inc.*,
   2021 U.S. Dist. LEXIS 125865 (D.N.J. Apr. 29, 2021) ........................14

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.*,
   215 F. Supp. 2d 482 (D.N.J. 2002) ...............................................7, 8, 13

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) ....................................................................7

*Tyson Foods, Inc. v. Bouapheko*,
   577 U.S. 442 (2016)..............................................................11, 12, 13

*Walmart v. Dukes*.
   131 S.Ct.............................................................................................1, 8, 9

*Williams v. Jani-King of Philadelphia, Inc.*,
   837 F.3d 314 (3d Cir. 2016) ..................................................................15

**Court Rules**

Local Civil Rule 7.1 ........................................................................................7

Local Civil Rule 7.1(i) ..................................................................................1, 7

New Jersey Rule of Court 4:49-2.....................................................................7

Rule 23 ............................................................................................................1

Rule 23(f) .........................................................................................................7

## I.    INTRODUCTION

Defendant Target Corporation ("Target") fails to meet the high standard for reconsideration under Local Rule 7.1(i) as it mainly just disagrees with the Court's well-reasoned opinion, which is not a valid basis for reconsideration. Target cannot show the Court made "a clear error of law" in determining Plaintiffs satisfied the predominance factor of Rule 23, nor can it show the Court failed to conduct a "rigorous analysis" of the common evidence pursuant to *Walmart v. Dukes* when analyzing predominance. 131 S.Ct. 2541 (2011). The Court considered the following common evidence in finding predominance: Target handbooks direct Class members to clock in and out at their home department time clocks; the distribution centers use the same time clocks and related software; the same payroll and time clock data exists for all Class Members; Class Members are required to travel on designated walkways at all three distribution centers; the distribution centers have a singular entrance/exit; the distribution centers have the same security screening procedures; and all Class Members are subject to a uniform policy of not being paid for the same pre- and post-shift activities. This common evidence, which is reflected by Target's own policies, unites the Class as it raises common questions that predominate over individualized inquiries, all of which can be answered in one fell swoop.

Further, the Court was right to rely in part on the class certification decision in *Davis v. Target Corp.*, which calls into question the same policies and much of

1

the same evidence present in this case. *Davis v. Target Corp.*, Civ. No. 23-89, 2025 U.S. Dist. LEXIS 28957 (E.D.Pa. Feb. 19, 2025). Target's motion for de-certification in *Davis* has been denied following the Court's ruling in this case, and the *Davis* Court granted ***plaintiff's motion for summary judgment*** on liability setting that case on course for a trial on damages. The purported differences identified by Target between this case and *Davis* do not undo the countless similarities, and do not alter the rigorous analysis undertaken by the Court here.

Target's defenses, which are rehashed but not further developed in its motion for reconsideration, are merits-based and therefore are not a barrier to class certification. Moreover, to the extent the defenses are applicable under the NJWHL, which Plaintiff maintains they are not, these defenses are common to all class members, buttressing Plaintiffs' position that class treatment is appropriate.

Finally, this is Target's fourth bite at the apple having litigated and lost its efforts to prevent class certification once before this Court and twice before the Eastern District of Pennsylvania. Offering nothing new here, Target has not met the reconsideration legal standard and its Motion should be denied.

## II.    Factual Background[1]

### A.    Common Evidence Already Considered by the Court

#### i.    Target Does Not Pay Class Members for Time Spent Walking in the Warehouse Prior to the Beginning of Their Scheduled Shift

Plaintiff was required to enter the warehouse using her assigned badge. ECF No. 56-5, Rog. 5. The same is true for the Class members. ECF No. 56-6, Santiago Tr. 177:15-20; ECF No. 56-7, Powell Tr. 43:16-25; 47:10-24. Plaintiff and each Class member employed at the Logan warehouse passed through the same main entrance. The Perth Amboy and Burlington warehouses similarly have a single entrance class members passed through to begin their work day. ECF No. 56-6, Santiago Tr. 53:9-14; ECF No. 56-7, Powell Tr. 81:13-21; ECF No. 56-8, Ferreira Tr. 36:7-9; 38:1-3; ECF No. 56-9, Target Corporate Designee Dep. Tr. 75:10-14.

Class members are assigned to a "home department" in the warehouse. ECF No. 56-10, (Handbooks) at TARGET-SADLER 000103, 168, 209, 296 ("Use your home department time clock for punching in and out"); 242 ("Use only your home department time clock for punching in and out"); ECF No. 56-9, Target Corporate Designee Dep. Tr. 65:25-66:8. After badging in near the main entrance, Class Members are required to walk on a designated walkway to get to their assigned home department. ECF No. 56-6, Santiago Tr. 154:1-155:2; ECF No. 56-11 (Santiago Ex.

---

[1] Plaintiffs incorporate the facts in their original Class Certification brief and reply, as well as their Motion for Summary Judgment. ECF Nos. 58, 71, 96-1.

19 at SADLER000097); ECF No. 56-7, Powell Tr. 73:22-74:22; ECF No. 56-9, Target Corporate Designee Dep. Tr. 77:2-6. Plaintiffs cannot walk aimlessly; they must use designated walkways to go to their assigned department locations. ECF No. 56-6, Santiago Dep. 81:2-6; 155:3-9; ECF No. 56-7, Powell Tr. 74:14-17; 120:1-13; 124:11-15. ECF No. 56-9, Target Corporate Designee Tr. 77:1-78:16.

All Class members must report to their assigned department at the start of their shift. ECF No. 56-7, Powell Tr. 73:22-76:16; 76:17-78:12; 78:13-79:5; 79:6-80:1; 80:2-1:5. Target generally pays them from the start of their shift. ECF No. 56-10, (Handbooks) at TARGET-SADLER 000295 ("paid time will begin at the scheduled start time of the assigned shift"). There is an exception for someone running late who clocks-in after the scheduled start time, then Target pays the Class member from his/her clock-in time. ECF No. 56-7, Powell Tr. 116:22-117:4; ECF No. 56-9, Target Corporate Designee Dep. Tr. 72:3-15.

Target's clock in policy can be summarized as follows: if a Class member clocks in at their home department time clocks *at or before* their scheduled start time, she is paid from the scheduled start time, while Class members who clock in after their scheduled start time are paid from the time they clock in at the home department time clock. ECF No. 56-9, Target Corporate Designee Dep. Tr. 77:2-6. Target does not pay Class members for the time they spend traveling to their time clock before their scheduled shift starts. *Id.* 75:4-9.

ii.    **Target Does not Pay Class Member Post-Shift Time Within the Facility After Class Members Clock Out to go Through Security Screening Measures**

After clocking out, Class members follow the same walkway they used at the beginning of their shifts to walk to the same main entrance they entered through at the beginning of their workday. ECF No. 56-7, Powell Tr. 120:1-13; ECF No. 56-6, Santiago Tr. 147:4-21; ECF No. 56-8, Ferreira Tr. 70:19-25; 73:17-20; ECF No. 56-9, Target Corporate Designee Dep. Tr. 70:22-71:3. Class members swipe their employee badge upon exiting. ECF No. 56-9, Target Corporate Designee Dep. Tr. 70:3-11 ("They scan a badge on the way out and that's -- so we actually, for safety reasons, we know who is in the building and who to make sure that people have also left as well. In the event of an emergency we would be able to track our team members."); 70:22-71:3; ECF No. 56-6, Santiago Tr. 176:17-25; 178:24-179:1; ECF No. 56-7, Powell Tr. 62:7-20.

After Target stops paying Plaintiffs it requires them to perform work by walking on certain designated pathways to undergo security screening measures, badge out, and exit through the main entrance. ECF No. 56-8, Ferreira Tr. 40:19-42:3 (metal detectors were used on Class members exiting the Perth Amboy warehouse during the class period); ECF No. 56-6, Santiago Tr. 55:4-15 (metal detectors were used on Class members exiting the Logan warehouse during the class period); ECF No. 56-7, Powell Tr. 44:12-45:10 ("security specialist" at the

5

Burlington singular main entrance/exit that "engage[s] with team members entering and exiting the building").

Because Class members are not paid until their shift starts (at the earliest) and are only paid until they clock out at the timeclocks, they are necessarily not paid for any of this pre- or post-shift time. ECF No. 56-9, Target Corporate Designee Dep. Tr. 50:18-51:1, 53:1-8.

### iii.    The Walking Time is Measurable for the Class Members

The distance at issue in this case, as well as the corresponding time, is measurable. Indeed, Plaintiff's expert Dr. Robert G. Radwin inspected each facility and measured the intra-warehouse walking time. ECF No. 56-4. Target's attempt to exclude Dr. Radwin's report in *Davis* was rejected by Judge Murphy of the Eastern District of Pennsylvania. ECF No. 95-1.

Dr. Radwin inspected the three warehouses in New Jersey and collected and analyzed the data to determine the amount of time spent on pre- and post-shift intra-facility travel by the Class members.  *Id.* at p. 3. To gather the data for his analysis, Dr. Radwin used the pathways led by Target representatives to the home department timeclock areas, which were often on designated paths with colored markings on the floor and with corresponding guardrails. *Id.* at pp. 4, 5, 7.

In addition to this expert evidence, Class Representative Plaintiff provided evidence of her estimated time spent completing the required pre- and post-shift

activities: an average of 7 minutes a day to walk to the exit after clocking out and approximately 2-5 minutes to walk to the timeclocks to clock-in. ECF No. 56-12 at Rog. 2. This evidence from Plaintiff is unrefuted by Target in discovery.

### iv.    The Court's Order Granting of Class Certification

On January 29, 2025, this Court issued a 13-page opinion granting class certification. ECF No. 82. The following day, an order was issued regarding same. ECF No. 83. On February 13, 2025, Target filed a Rule 23(f) petition. ECF No. 85. Then Target filed the instant Motion, which is largely identical to its 23(f) petition. ECF No. 86. Five days later, Target withdrew its 23(f) petition.

## III.    ARGUMENT

### A. Legal Standard2

Reconsideration under Local Civil Rule 7.1(i) is an "extraordinary remedy" that is to be granted "very sparingly." *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002). To be successful on a motion for reconsideration, the moving party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,

---

[2] Target cites the improper standard for reconsideration under New Jersey Rule of Court 4:49-2 rather than Local Civil Rule 7.1.

176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *See Bowers v. NCAA*, 130 F. Supp. 2d 610, 612-13 (D.N.J. 2001). Nor is a motion for reconsideration an opportunity to "ask the [C]ourt to rethink what it ha[s] already thought through[.]" *See Interfaith Cmty. Org.*, 215 F.Supp. 2d at 507 (second alteration in original) (citation omitted). "Rather, the rule permits a reconsideration only when 'dispositive factual matters or controlling decisions of law' were presented to the court but were overlooked." *Id.* (quoting *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F.Supp. 826, 831 (D.N.J. 1992)).

Target's Motion does not fall into any of these categories.

## B. The District Court Engaged in the Necessary "Rigorous Analysis" Required by *Dukes*

The Court did not apply an erroneous legal standard or make a clear error of law when analyzing predominance, and did in fact conduct a "rigorous analysis" as required by *Walmart v. Dukes*. 131 S.Ct. at 2551. That rigorous analysis shows that Plaintiffs easily satisfied the predominance requirement by presenting a fundamental question common to all class members: whether the time spent in pre- and post-shift activity constitutes "hours worked" under the NJWHL, making it compensable. The answer to that question is driven by common evidence in the form of Target's own policies that apply uniformly to the Class.

Target argues that the Court failed to apply the standard set forth in *Dukes* showing the evidence will "generate common answers." *Dukes*, 131 S.Ct. at 2551. This misses the mark. The Court framed the predominance inquiry by stating the analysis focuses on "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct. ***This is particularly so where the inquiry necessarily focuses on what defendants did rather than what class members did, so the proof for these issues will not vary among class members***." ECF No. 82 at 11 (emphasis added) (citations omitted). In other words, the Court's finding of predominance was based on Target's policies and procedures, and is not disturbed by marginal differences between the three distribution centers.

At the crux of the predominance analysis was Target's policies that apply equally to all class members. This heavily favors certification. *See Hargrove v. Sleepy's LLC*, No. 22-2040, 2023 U.S. App. LEXIS 14553 at *7 (3d Cir. June 12, 2023) ("common corporate policies . . . carry great weight for certification purposes, and ***predominance is rarely defeated in cases where such uniform policies exist.***") (emphasis added). Here, the policies applicable to all class members are abundant therefore driving a common answer. Plaintiffs are only paid for the time between their scheduled shift start to the time they clock out at the end of their shifts. This was confirmed by Target's corporate designee. ECF No. 56-9, Target Corporate

Designee Tr. 72:3-6; 73:17-22. Further, at all three New Jersey warehouses, Class members are required to enter and exit through a single point of entry. ECF No. 56-6, Santiago Tr. 53:9-14; ECF No. 56-7, Powell Tr. 81:13-21; ECF No. 56-8, Ferreira Tr. 36:7-9; 38:1-3; ECF No. 56-9, Target Corporate Designee Tr. 75:10-14. Then Class Members use specific walkways designated by floor markings to get to their assigned home department where they are directed to clock in. ECF No. 56-6, Santiago Tr. 154:1-155:2; ECF No. 56-11, (Santiago Ex. 19 at SADLER000097); ECF No. 56-7, Powell Tr. 73:22-74:22; ECF No. 56-9, Target Corporate Designee Tr. 77:2-6. Class members are also required to use the same walkways to travel from their timeclocks upon clocking out to go through Target's mandatory security screening measures, all by Target's design and for its benefit. The Court correctly found that these common policies applicable to all Class Members make "a strong case" for commonality. ECF No. 82 at 11. And while the predominance requirement is more stringent than commonality, these uniformly applicable policies show that the question raised by these common practices predominate over individualized inquiries, and those same questions are answered by the policies themselves.

Target's attempts to concoct individualized issues do not undo its uniform corporate policies that support predominance. Target notes the potential that employees (1) did not use the pathways measured by Plaintiff's expert and (2) used different time clocks to clock in and out. This does not affect the analysis and does

not disturb the Court's finding of predominance. Plaintiffs presented evidence showing that the paths contemplated by her expert were those chosen by Target's own employees, who led the tours of all three subject warehouses. ECF No. 56-6, Santiago Tr. 159:24-160:1; ECF No. 56-7, Powell Tr. 140:25-141:4; ECF No. 56-8, Ferreira Tr. 89:12-15. It defies common sense that the Target employees most familiar with the warehouses decided to lead Plaintiff's expert on random pathways not frequented by the Class Members. Regardless, alternative pathways are equably measurable by Dr. Radwin, and can be considered as needed to alter Plaintiff's damages calculation should that be necessary. And Dr. Radwin's measurements are reliable; Target's motion to exclude his report in *Davis* was denied. ECF No. 95-1.

Target's timeclock location argument also fails because they do not keep record of where Class members clock in in each warehouse. Accordingly, Plaintiff is permitted to fill the "evidentiary gap" in Target's records. *See Tyson Foods, Inc. v. Bouapheko*, 577 U.S. 442, at 456 (2016); *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 483 (3d Cir. 2020) (allowing employers to thwart class actions with lack of records would be "crafting a vast loophole to class certification"). Plaintiff has done so through expert analysis in conjunction with Target's own policies and data pertaining to the assigned departments of Class members. Putting aside the deficiencies in these arguments, at their core they go to the *amount of damage*, and do not preclude the fact that there is a common answer to the threshold question

predominating here, which can be determined through common evidence, indicating the amount of time class members were not paid for time spent engaging in compensable activity under New Jersey laws.

### C. The Court's Reliance on *Davis* was proper

The Court's reliance on the class certification decision in *Davis* is well founded, and Target's contention that the Court failed to "engag[e] in a rigorous analysis of the evidence distinguishing this action from *Davis*" is incorrect. Indeed, while Target believes the Court disregarded that employees may have taken different paths within the warehouses, or used different timeclocks at different times, the Court correctly found that these variables go to "go to individual damages which does not preclude certification." ECF No. 82 at 12. Target raised a similar argument in *Davis*, where it argued class members may have used different timeclocks than their assigned home department. But in granting summary judgment for plaintiffs, the *Davis* court wrote that this fact, if proven true, will only serve to "impact a jury's assessment of damages." *Davis*, 2025 U.S. Dist. LEXIS 28957, at *25

The potential for differing damages does not disturb the Court's order granting certification, as held by the Supreme Court in *Tyson Foods, Inc. v. Bouapheko*, where the Court approved of class certification despite discrepant liability and damages results between different employees who worked different amounts of time

given there were central questions that predominated. *Tyson Foods, Inc. v. Bouapheko*, 577 U.S. at 453. This Court's analysis should not be disturbed.

### D. Target's Restatement of its Common Defenses Still do not Pose a Barrier to Class Certification

Target's other defenses are simply restated and fare no better than they did in its opposition to Plaintiff's Class Certification motion. Target is simply asking "the [C]ourt to rethink what it ha[s] already thought through[,]" which is not a basis for reconsideration. *See Interfaith Cmty. Org.*, 215 F.Supp. 2d at 507. Target's defense that damages are offset by "retro-payments" made, and Target's allegation that the uncompensated time is allegedly *de minimis* do not defeat predominance and do not undo the Court's order granting certification.

The "retro payment" argument fails for two reasons. Notably, Plaintiff never received a "retro payment," thus it cannot be argued that her damages are cancelled. Even still, the inquiry at the class certification stage focuses on whether a plaintiff can show *fact of damage* without regard to whether there are different individual damages for the class members. Here, Plaintiff has adequately demonstrated the fact of damage through Target's admitted policy of failing to pay Plaintiff and Class members for the pre- and post-shift activities that Plaintiffs contend are compensable.

Regardless, Defendants' reliance on the "retro payment" argument is no more than a common defense to be tested at trial. Target makes issue of the Court's

reservation on this issue for a later date when the record is more robust, ignoring the fact that it was Target's decision to withhold information on the retro payments during the discovery period. Plainly, it was Target who failed to build a record on its defense, and it is Target who must now grapple with that failure. Indeed, Target refused, over Plaintiff's objection, to provide the reasons why these payments were made or how they were made. Target withheld all information relating to the payments, including the facts and data underlying the two separate time studies performed by Seyfarth Shaw which allegedly resulted in those payments; what employees were told when they received the payments; or what time period the payments encompassed. But now Target asks the Court to rely on that very information, which is absent from the record, to defeat certification. This Court should see through the glaring deficiency in Target's strategy, and recognize the retro payment argument for what it is: a common amount of damages defense to Plaintiffs' claims that has no bearing on the certification analysis.

Target's *de minimis* defense similarly fails because it is a merits-based argument that does not pose a barrier to class certification. *See Hassine v. Simon's Agency, Inc.*, 2021 U.S. Dist. LEXIS 125865, at *10-11 n. 1 (D.N.J. Apr. 29, 2021) (de minimis "argument has been largely rejected by courts" at class certification and granting class certification even where defendant claimed damages was $3.87 per class member; *Alfonso v. FedEx Ground Package Sys.*, No. 3:21-cv-01644, 2024

U.S. Dist. LEXIS 40928, at *31 (D. Conn. Mar. 8, 2024) (granting class certification in walking time case and rejecting de minimis defense as it is a "merits-based argument[]"); *see also Williams v. Jani-King of Philadelphia, Inc.*, 837 F.3d 314, 322 (3d Cir. 2016) ("[T]he class certification stage is not the place for a decision on the merits."). Target does nothing to move the needle on this defense in its Motion, beyond attempting to use its de minimis argument in tandem with the offset defense to defeat class certification. In doing so, Target has again highlighted that these defenses plainly go to the amount of damage, not the fact of damage. And even if the de minimis defense was recognized under New Jersey law (which Target has not demonstrated), it only buttresses Plaintiff's case for class certification as it highlights that class treatment is superior to individual actions given the relatively small damages suffered by each class member.

## IV.    CONCLUSION

For the reasons above, Plaintiffs respectfully request that this Court deny Target's Motion for Reconsideration.

Dated: March 3, 2025                 Respectfully submitted,

                                     */s/ Charles J. Kocher*_____
                                     Charles J. Kocher, Esq. (NJ ID 016952004)
                                     Gaetano J. DiPersia, Esq. (NJ ID 442152023)
                                     McOMBER McOMBER & LUBER, P.C.
                                     50 Lake Center Drive, Suite 400
                                     Marlton, NJ 08053
                                     (856) 985-9800
                                     cjk@njlegal.com
                                     *Attorneys for Class Representative Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2025, I caused a copy of the foregoing to be filed electronically and served via ECF on all parties indicated on the electronic filing receipt.

By:    */s/ Charles J. Kocher*
   Charles J. Kocher, Esq. (NJ ID 016952004)
   McOMBER McOMBER & LUBER, P.C.
   50 Lake Center Drive, Suite 400
   Marlton, NJ 08053
   (856) 985-9800
   cjk@njlegal.com

   *Attorneys for Class Representative Plaintiff and the Class*