# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRYSTAL SADLER, on behalf of herself, individually and on behalf of all similarly situated individuals, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> TARGET CORPORATION, <br><br> *Defendants.* | Civ. No. 1:23-cv-00030-CPO-SAK |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S UNOPPOSED MOTION FOR
# <u>PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT</u>

## MOTION DAY – November 17, 2025

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................1

II.   LEGAL CLAIMS AND LITIGATION RISKS ...............................................2

    A.    Plaintiff's Claims.................................................................2

    B.    Litigation Risks ..................................................................3

III.  PROCEDURAL HISTORY AND SETTLEMENT.........................................4

    A.    Procedural History...............................................................4

    B.    The Settlement Agreement & Terms ..........................................6

        1.    The Class Definition .....................................................6

        2.    The Monetary Payments .................................................7

        3.    The Release ...............................................................9

IV.   ARGUMENT.......................................................................................9

    A.    Legal Standards for Class Action Settlement Approval .....................9

    B.    Preliminary Approval is Warranted ........................................11

    C.    The Notice Plan Should Be Approved ......................................17

    D.    CAFA Notice is Required and Will be Timely Provided ..................20

    E.    The Court Should Set a Final Approval Hearing...........................20

V.    CONCLUSION...................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 10, 2004).............................10, 20

*Automotive Refinishing v. KLA-Tencor Corp.*,
  Civil Action No. 00-892-KAJ, 2003 U.S. Dist. LEXIS 4641 ...........................10

*Bernhard v. TD Bank, N.A.*,
  No. 08-4392, 2009 U.S. Dist. LEXIS 92308 (D.N.J. Oct. 5, 2009)...................15

*Beuregard v. Hunter*,
  2019 U.S. Dist. Lexis 23233 (D.N.J. Sept. 27, 2019) ........................................16

*Brown v. Progressions Behav. Health Servs., Inc.*,
  No. 16-6054, 2017 WL 2986300 (E.D. Pa. July 13, 2017)..........................14, 15

*Brumley v. Camin Cargo Control, Inc.*,
  No. 08-1798, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) ..................................15

*Caddick v. Tasty Baking Co.*,
  No. 19-cv-02106, 2021 U.S. Dist. LEXIS 70016 (E.D. Pa. Apr. 12,
  2021) ...............................................................................................................8, 18

*Copley v. Evolution Well Servs. Operating, LLC*,
  No. 20-CV-01442, 2023 U.S. Dist. LEXIS 23452 (W.D. Pa. Feb.
  10, 2023) ............................................................................................................13

*D.R. by MR. v. East Brunswick Bd. of Educ.*,
  109 F.3d 896(3d Cir. 1997) ...............................................................................11

*In re Diet Drugs Prod. Liab. Litig.*,
  369 F.3d 293 (3d Cir. 2004) ..............................................................................18

*Dominguez v. Galaxy Recycling, Inc.*,
  No. 12-7521, 2017 U.S. Dist. LEXIS 88855 (D.N.J. June 9, 2017) ...........13, 14

*Dugan v. Towers, Perrin, Forster & Crosby, Inc.*,
  No. 09-CV-5099, 2013 WL 5330116 (E.D. Pa. Sept. 24, 2013)........................17

*Filby v. Windsor Mold USA, Inc.*,
No. 13-CV-1582, 2015 U.S. Dist. LEXIS 30034 (N.D. Ohio Mar. 11, 2015) ................................................................................ 8

*Ford v. Lehigh Valley Rest. Group, Inc.*,
No. 14-cv-00227, 2016 U.S. Dist. LEXIS 31732 (M.D. Pa. Mar. 10, 2016) .............................................................................. 13

*Fujiwara v. Sushi Yasuda Ltd.*,
58 F. Supp. 3d 424 (S.D.N.Y. 2014) ...................................... 8

*In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................... 10

*Hall v. Accolade, Inc.*,
No. 17-3423, 2020 U.S. Dist. LEXIS 52632 (E.D. Pa. Mar. 24, 2020) ..................................................................................... 14

*Hall v. Adelphia, et al.*,
No. 21-cv-01106 (D.N.J. Jan. 1, 2024) (O'Hearn, J.) ECF No. 82 ............. 13, 16

*Hanlon v. Palace Ent. Holdings, LLC*,
No. 11-987, 2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012) .................... 10

*In re HealthEC LLC Data Breach Litig.*,
2025 U.S. Dist. LEXIS 107723 (D.N.J. June 6, 2025)................... 3, 16

*Kostka v. Dickey's Barbecue Rests., Inc.*,
No. 20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186 (N.D. Tex. Oct. 14, 2022) ..................................................................... 20

*Kress v. Fulton Bank, N.A.*,
No. 19-18985, 2021 U.S. Dist. LEXIS 259351 (D.N.J. Sep. 17, 2021) ..................................................................................... 15

*LaChance v. Harrington*,
965 F. Supp. 630 (E.D. Pa. 1996)........................................ 18

*Maddy v. General Elec. Co.*,
No. 14-490, 2017 WL 2780741 (D.N.J. June 26, 2017) .................... 15

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007).......................................... 10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ........................................................................18

*Myers v. Jani-King of Philadelphia, Inc.*,
  No. 9-1738, 2019 U.S. Dist. LEXIS 144929 (E.D. Pa. Aug. 26,
  2019) .....................................................................................8, 14

*In re Nat. Football League Players' Concussion Injury Litigation*,
  307 F.R.D. 351 (E.D. Pa. 2015).........................................................12

*In re National Football League Players' Concussion Injury Litigation*,
  301 F.R.D. 191 (E.D. Pa. 2014)......................................................1, 17

*Schaub v. Chesapeake & Delaware Brewing Holdings*,
  No. 16-756, 2016 U.S. Dist. LEXIS 157203 (E.D. Pa. Nov. 14,
  2016) ..........................................................................................13

*Tower v. Portuguese, S.A.*,
  No. 22-cv-6746, U.S. Dist. LEXIS 77128 (D.N.J. April 22, 2025) ..............12,20

**Statutes**

28 U.S.C. § 1715 .....................................................................20, 21

F.L.S.A., 29 U.S.C. § 201 *et seq.*.................................................8, 15, 18

N.J.S.A. 34:11-4.2......................................................................2

N.J.S.A. 34:11-4.4......................................................................2

**Regulations**

N.J.A.C. 12:56-5.1 ......................................................................3

**Rules**

Fed. R. Civ. P. 23 ...............................................................*passim*

Fed. R. Civ. P. 30 ......................................................................4

## I.    INTRODUCTION

Plaintiff, Krystal Sadler, respectfully submits this Brief in support of her Unopposed Motion for Preliminary Approval of the Class Settlement. Plaintiff and Defendant Target Corporation ("Defendant" or "Target") have agreed to settle this class action for a total of $4,600,000, inclusive of attorneys' fees and costs. Ex. 1 (Settlement Agreement).[1]

During an in-person settlement conference on June 25, 2025, with the assistance of United States Magistrate Judge Sharon A. King serving as a neutral, the Parties reached a class-wide settlement.

The Parties' settlement "falls within the range of possible approval" and warrants preliminary approval. *In re National Football League Players' Concussion Injury Litigation*, 301 F.R.D. 191, 197-98 (E.D. Pa. 2014) ("*NFL I*"). Moreover, the settlement is a desirable alternative to the expense, uncertainty, and delay that would result from further litigation of Plaintiff's class action claims. Because the settlement is fair, reasonable, and adequate in all respects, and for the additional reasons noted herein, Plaintiff respectfully suggests the settlement should be approved.

---

[1] All exhibits are to the accompanying Declaration of Charles J. Kocher, Esq. Capitalized terms not defined herein have the meaning set forth in the Settlement Agreement.

The Class[2] is defined as "(a) Plaintiff and (b) all Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of the Final Approval Order" when this Court will enter final judgment. Plaintiff also seeks an Order (1) granting Plaintiff permission to give Class Members notice of the settlement, substantially in the form attached hereto as Exhibit 2, and (2) scheduling a final approval hearing.

## II.    LEGAL CLAIMS AND LITIGATION RISKS

### A.    Plaintiff's Claims

In New Jersey, Target operates three distribution centers; they are located in Burlington, Perth Amboy, and Logan Township. Between September 8, 2022 and November 22, 2022, target employed Plaintiff at the Logan distribution center as an hourly, non-exempt worker. Amended Class Action Complaint ("Am. Compl.") ECF No. 33 ¶¶ 4, 8-9. Plaintiff alleges that Defendants violated New Jersey state wage and hour laws, N.J.S.A. 34:11-56a *et seq*; N.J.S.A. 34:11-4.2; N.J.S.A. 34:11-4.4., by not paying its Progression Team members for "all hours worked." Am. Compl. ECF No. 33, ¶¶ 26-42. In particular, Plaintiff contends that Defendant failed to pay similarly situated hourly, non-exempt Target employees the required

---

[2] This Court certified a litigated Class on January 30, 2025. ECF No. 83. The Settlement Agreement makes references to a "Settlement Class." Ex. 1 at p.2. For brevity the Parties refer to the "Settlement Class" as the "Class."

minimum wage and overtime for time spent before their shifts traveling from the entrance of their respective distribution centers to their assigned time clocks, and after their shifts from their time clocks to the exit of the distribution centers. Am. Compl. ECF No. 33 ¶¶ 34, 42. Target denies the allegations and disputes the merits of Plaintiff's individual and class-wide claims.

### B.    Litigation Risks

This settlement enables Plaintiff and Class Members to avoid significant litigation risks. On June 25, 2025, when the Parties initially agreed to resolve Plaintiff's class-wide claims, the Parties' competing summary judgment motions were ripe for this Court's determination. The Parties dispute the meaning of the definition of "all hours worked" under New Jersey law (N.J.A.C. 12:56-5.1) and the viability of Target's defenses, including the application of the *de minimis* doctrine, thus leaving the Parties exposed to potential adverse rulings.  "In litigation, nothing is ever certain." *See In re HealthEC LLC Data Breach Litig.*, 2025 U.S. Dist. LEXIS 107723, at *29 (D.N.J. June 6, 2025).

Had Plaintiff's claims survived summary judgment, in whole, or in part, a jury trial would have followed necessitating pre-trial filings, such as motions *in limine*, or to strike or limit expert testimony, contested jury instructions and verdict forms, and other pretrial motions. There also likely would have been post-trial motions and an appeal. Consequently, the Parties would have borne significant and mounting

risks and costs related to further litigation and appeal. Moreover, those continued proceedings left Plaintiff and the certified Class with the prospect of recovering less than the relief afforded by the Parties' settlement, or perhaps nothing at all. The Parties' settlement eliminates the uncertainty of recovery for Plaintiff and the Class Members and provides them with meaningful relief.

## III.   PROCEDURAL HISTORY AND SETTLEMENT

### A.   Procedural History

Plaintiff filed this case on November 30, 2022, almost three years ago, in New Jersey state court. On January 4, 2023, Target removed this action. ECF No. 1. On August 30, 2023, Plaintiff amended the Complaint, ECF No. 33. On September 15, 2023, in response to the Amended Complaint, Target filed its Answer. ECF No. 34. The Parties subsequently engaged in extensive fact and expert discovery, including (1) responding to written discovery requests, (2) producing and reviewing extensive time and pay data, as well as many other records, (3) inspections at each of Target's three New Jersey distribution centers. (4) deposing Plaintiff and management witnesses from each of Target's three New Jersey distribution centers, (5) producing and deposing a corporate representative under Rule 30(b)(6), and (6) undertaking expert discovery, including the disclosure of expert reports and depositions of proposed time and motion and damages experts. There were multiple discovery disputes decided by Magistrate Judge King. *See, e.g.*, ECF Nos. 39, 44, 62, 115.

Following the Parties' initial discovery, on June 21, 2024, Plaintiff filed a Motion for Class Certification. ECF No. 56. On January 29, 2025, this Court granted class action certification. ECF No. 82. Thereafter, in accordance with the Court's certification Order, notice was given to 13,707 Class Members and 11 putative Class Members opted out of the class action. ECF No. 122.

On February 13, 2025, with respect to the Court's certification Order, Target filed a Motion for Reconsideration and a Notice of Interlocutory Appeal. ECF Nos. 85, 86. On February 14, 2025, Target moved to stay these proceedings or, alternatively, to extend time pending disposition of its Motion for Reconsideration. ECF No. 87. On February 17, 2025, Target withdrew its Motion to Stay; on February 18, 2025, the Court terminated the motion. ECF No. 88, 89. On February 18, 2025, Target filed a second Motion to Stay, which Plaintiff opposed; on March 3, 2025, the Court denied Target's second motion. ECF Nos. 91, 104.

On March 27, 2025, Target filed with the U.S. Court of Appeals for the Third Circuit a Rule 23(f) petition seeking review of the Court's class certification Order. Plaintiff moved to dismiss the appeal, but that motion was denied. On June 9, 2025, the Third Circuit denied Target's request for interlocutory appeal of the class certification Order.

On February 27, 2025, the Parties filed competing motions for summary judgment as ordered by the Court on September 23, 2025. ECF Nos. 96-97. As

directed by the Court, the Parties withdrew these motions without prejudice. ECF Nos. 131, 132.

On June 25, 2025, Magistrate Judge King conducted an in-person settlement conference at the U.S. District Courthouse in Camden, New Jersey. The Parties, and specifically Plaintiff and her counsel, as well as Target and its counsel, were present. Before the settlement conference, the Parties engaged in settlement negotiations. Magistrate Judge King assisted the Parties by helping them reach a class-wide settlement.

On July 29, 2025, the Parties executed a settlement Term Sheet. The Parties have since fully memorialized their settlement, as evidenced by their signed Release and Settlement Agreement, attached hereto as Exhibit 1.

### B. The Settlement Agreement & Terms

The terms of the Settlement Agreement are discussed below.

### 1. The Class Definition

Pursuant to Federal Rule of Civil Procedure 23(c), the Court certified the following Class:

> Plaintiff and (b) all Progression Team Members who have been employed as hourly, non-exempt workers at any of Target's New Jersey distribution centers at any time from August 6, 2019 through the date of final judgment in this matter.

ECF No. 83. The Release and Settlement Agreement references "the date of the Final Approval Order"; assuming the Court orders final approval, and to

eliminate the need to re-certify a settlement class, the Parties recognize that date will be the same date as final judgment. Ex. 1 ¶ 1. Approximately 13,700 individuals, including Plaintiff, fall within this class definition.

### 2. The Monetary Payments

To settle all claims asserted in this action, Defendant agreed to create a Global Settlement Fund totaling $4,600,000. Ex. 1 ¶ 8. If the Court approves the requested service award, and attorneys' fees, and expenses, the Net Settlement Fund distributed to Class will approximately total $2,756,666.67. This amount represents the Global Settlement Fund less (1) Class Counsel's fees ($1,533,333.33), (2) expenses, including the costs of notice and settlement administration estimated at approximately $300,000[3], and (2) a $10,000 Service Award payable to Plaintiff. The Net Settlement Fund, less payroll taxes, withholdings, and deductions, will then be distributed to Settlement Members who do not exclude themselves from the settlement. Ex. 1 ¶¶ 20, 21.

According to the number of each Class Member's shifts worked, or another objectively feasible measure, as determined by Class Counsel and the Settlement Administrator, and approved by the Court in the Final Approval Order, Settlement Awards will be made on a *pro rata* basis. Ex. 1 ¶ 12. Within fourteen (14) calendar days of the Court's preliminary approval of the Parties' settlement, Target will

---

[3] Anticipated expenses will include more than $150,000 in notice costs.

provide the Settlement Administrator with data necessary for the Settlement Administrator and Class Counsel to perform a *pro rata* Settlement Award analysis. Ex. 1 ¶ 36. The *pro rata* Settlement Awards ensure "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); *see also Myers v. Jani-King of Philadelphia, Inc.*, No. 9-1738, 2019 U.S. Dist. LEXIS 144929, at *25 n. 5(E.D. Pa. Aug. 26, 2019) (approving distribution formula based on total payments made by each member for franchise fees, finders fees, insurance payments, etc., made during the class period and finding "[t]his method assures that individuals who had a longer relationship with Jani-King, and thus made larger payments in fees, will ultimately receive greater compensation under the Settlement Agreement."); *Caddick v. Tasty Baking Co.*, No. 19-cv-02106, 2021 U.S. Dist. LEXIS 70016, at *19 (E.D. Pa. Apr. 12, 2021) ("FLSA and state law class members will receive payments based on the same calculation. 'The settlement share allocation is individually determined based on transactional data from each Settlement Class Member's distributorship and the number of weeks each such distributor worked within the applicable period.'"); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 434 (S.D.N.Y. 2014) (granting final approval of *pro rata* settlement distributions based on number of shifts); *Filby v. Windsor Mold USA, Inc.*, No. 13-CV-1582, 2015 U.S. Dist. LEXIS 30034, at *2 (N.D. Ohio Mar. 11, 2015) (same).

In recognition of her efforts on behalf of the certified class, Plaintiff seeks preliminary approval of a $10,000 Service Award. Class. Ex. 1 ¶ 23. Additionally, subject to Court approval, and after a fee petition to be filed 14 days before the Final Approval hearing, Class Counsel will seek one-third of the Maximum Settlement Amount, or $1,533,333.33, plus expenses approximating $300,000. *Id.* ¶ 26.

### 3. The Release

In exchange for the above consideration, Class Members who do not exclude themselves from the settlement will release

> any and all claims, rights, demands, liabilities, and causes of action of every nature and description during the Class Period, whether known or unknown, that were, or could have been, made by Target's employees who worked as Progression Team Members employed at Target's New Jersey Distribution centers at any time between August 6, 2019 and the date of final judgment in the Action and who have claims for allegedly unpaid wages or compensation of any kind, liquidated damages, penalties, attorneys' fees, costs, expenses, interest, settlement administrators costs, service awards, and any other monetary claims related to the payment of wages.

Ex. 1 ¶ 13. Class Members who do not exclude themselves from the settlement, upon distribution of Settlement Awards, will have released their claims. Ex. 1 ¶ 28.

## IV. ARGUMENT

### A. Legal Standards for Class Action Settlement Approval

To ensure class members receive sufficient notice of settlement, and the underlying settlement is "fair, reasonable, and adequate," federal courts must approve class action settlements. Fed. R. Civ. P. 23(e)(2). Approval of a class action

settlement entails a two-step process.

*First*, courts make a preliminary determination addressing the settlement's fairness. Once a court preliminarily determines a class-wide settlement is fair, class members are then notified about the settlement and a final fairness hearing is scheduled.

Preliminary approval merely "establishes an initial presumption of fairness," *In re GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 785 (3d Cir. 1995), and confirms "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies." *Automotive Refinishing*, 2003 U.S. Dist. LEXIS 4641, at *2-3. For preliminary approval, "the question is not whether the settlement merits final approval but whether it 'discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *Hanlon v. Palace Ent. Holdings, LLC*, No. 11-987, 2012 U.S. Dist. LEXIS 364, *14 (W.D. Pa. Jan. 3, 2012) (quoting *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)).

*Second*, at the final fairness hearing, courts undertake a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy. *See In re: Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist.

10

LEXIS 29163, at *2-5 (E.D. Pa. May 10, 2004). More specifically, courts must consider the factors outlined in Rule 23(e)(2), which states:

> *(2) Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

## B.    Preliminary Approval is Warranted

There are several reasons supporting preliminary approval.

***First***, like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlements because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901(3d Cir. 1997). Additionally, this

arm's length settlement, a requirement of Rule 23(e)(2)(B), was overseen by Magistrate Judge King at an in-person settlement conference. *See In re Nat. Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351, 377 (E.D. Pa. 2015) ("presence of mediator helps guarantee class members claims are not compromised"). Moreover, the Parties' settlement promotes good public policy and judicial economy because it resolves a pending case on behalf of a potential class of approximately 13,700 Class Members and avoids a jury trial and subsequent appeal.

***Second****, as discussed in section III above, the settlement is fair and reasonable. The specific amount each Class Member will receive is to be determined and distributed on a *pro rata* basis. This approach ensures each Class Member receives a fair share of the settlement amount in proportion to the amount of hours worked by each of them, thus satisfying Rule 23(e)(2)(D), which mandates the proposed settlement equitably treats class members. Further, Plaintiff's damages expert calculated Class Members' aggregate unpaid back wages to be approximately $4.3 million. The Global Settlement Fund exceeds that number, underscoring this settlement is fair, reasonable, and adequate. Notably, a defendant's relative financial resources do not render a settlement unreasonable. *See Tower v. Portuguese, S.A.*, No. 22-cv-6746, U.S. Dist. LEXIS 77128, at *24-25 (D.N.J. April 22, 2025) (citations omitted).

***Third***, this settlement enables Plaintiff and the Class Members to avoid significant litigation risks and costs. Because the Parties filed competing summary judgment motions, Plaintiff risked a null result and Target risked incurring potential liability. The Parties all bore significant risk. Moreover, those risks included additional delay of this action filed nearly three years ago, as well as costs, associated with subsequent litigation and appeal. Accordingly, Rule 23(e)(2)(C)(i) is satisfied because the Parties' settlement considers the costs, risks, and potential delays of appeal.

***Fourth***, although the Court will consider the requested service award and attorneys' fees and costs after a review of Plaintiff's fee petition in conjunction with final approval, it is notable neither request falls outside of the norm.

The requested $10,000 Service Award (Ex. 1 ¶ 23) falls in line with awards in similar cases. *See, e.g.*, *Hall v. Adelphia, et al.*, No. 21-cv-01106  (D.N.J. Jan. 1, 2024) (O'Hearn, J.) ECF No. 82 at ¶ 3; *Schaub v. Chesapeake & Delaware Brewing Holdings*, No. 16-756, 2016 U.S. Dist. LEXIS 157203, *15 (E.D. Pa. Nov. 14, 2016) (awarding $9,000 in tip-pooling class action); *Ford v. Lehigh Valley Rest. Group, Inc.*, No. 14-cv-00227, 2016 U.S. Dist. LEXIS 31732, at *2-3 (M.D. Pa. Mar. 10, 2016) (approving $10,000 service award in tip-pooling class action); *Dominguez v. Galaxy Recycling, Inc.*, No. 12-7521, 2017 U.S. Dist. LEXIS 88855, at *26 (D.N.J. June 9, 2017) (same); *Copley v. Evolution Well Servs. Operating, LLC*, No. 20-CV-

13

01442, 2023 U.S. Dist. LEXIS 23452, at *11 (W.D. Pa. Feb. 10, 2023) (same); *Brown v. Progressions Behav. Health Servs., Inc.*, No. 16-6054, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (same); *Myers v. Jani-King of Phila., Inc.*, No. 09-1738, 2019 U.S. Dist. LEXIS 144929, at *25 (E.D. Pa. Aug. 26, 2019) (same); *Hall v. Accolade, Inc.*, No. 17-3423, 2020 U.S. Dist. LEXIS 52632, at *26 (E.D. Pa. Mar. 24, 2020) (same).

At the final approval hearing, Class Counsel will ask the Court to approve the payment of the requested Service Award from the Global Settlement Amount because Plaintiff provided substantial assistance to Class Counsel in developing the claims in this case and throughout the litigation. Plaintiff was deposed, responded to written discovery, appeared at the settlement conference, and provided assistance to Class Counsel to pursue the legal claims and achieve this class-wide settlement on behalf of more than 13,700 absent Class Members. For these reasons, Plaintiff asserts the Service Award is reasonable and appropriate.

Class Counsel will request (1) a fee award of one-third (33 1/3 %) of the Global Settlement Amount, or $1,533,33.33, and (2) reasonable expenses. To "prevent unjust enrichment of class counsel [and] to reward counsel's successes and penalize their failures," the percentage of recovery method for awarding attorneys' fees is preferred in common fund situation such as presented here by the Parties' settlement. *Dominguez v. Galaxy Recycling, Inc.*, No. 12-7521, 2017 U.S. Dist.

LEXIS 88855, at *19 (D.N.J. June 9, 2017) (citations omitted). To ensure transparency with Class Members, the amount of fees and expenses requested, a tailored estimate for each Class Member's gross Settlement Award (Ex. 1 ¶ 38), and the proposed Service Award are noted in the Parties' proposed settlement notice (Ex. 2). Although Class Counsel will support their fee request in a more fulsome fee petition accompanying a motion seeking final settlement approval, Plaintiff seeks an initial determination the fee and expense request is preliminarily approved, as set forth in the accompanying proposed order, particularly given this hard-fought litigation that has lasted almost three years.

The requested fees and expenses are fair, reasonable and appropriate. *See Maddy v. General Elec. Co.*, No. 14-490, 2017 WL 2780741, at *6-8 (D.N.J. June 26, 2017) (approving attorneys' fees in amount of one-third of settlement plus expenses in collective and class action lawsuit under FLSA and state's laws); *Kress v. Fulton Bank, N.A.*, No. 19-18985, 2021 U.S. Dist. LEXIS 259351, at *34 (D.N.J. Sep. 17, 2021) (same); *Brown v. Progressions Behav. Health Servs., Inc.*, No. CV 16-6054, 2017 WL 2986300, at *5-7 (E.D. Pa. July 13, 2017) (same) (citing *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ("The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees."); *Bernhard v. TD Bank,*

*N.A.*, No. 08-4392, 2009 U.S. Dist. LEXIS 92308, at \*5 (D.N.J. Oct. 5, 2009) (granting preliminary approval, and ultimately final approval of attorneys' fees in the amount of one-third of the total settlement); *Beuregard v. Hunter*, 2019 U.S. Dist. Lexis 23233, at \*28-29 (D.N.J. Sept. 27, 2019) (noting requested attorneys' fees in the amount of 33 1/3% of the settlement amount was reasonable because "they are far less than the amount to which counsel are entitled under their retainer agreement, and the work performed to effectuate this settlement has been substantial."); *Hall v. Adelphia, et al.*, No. 21-cv-01106  (D.N.J. Jan. 1, 2024) (O'Hearn, J.) ECF No. 82 at ¶ 5 (preliminarily approving one-third of settlement amount as reasonable, and later approving the fee at final approval after consider Class Counsel's fee petition).

Accordingly, Class Counsel asks the Court to preliminarily approve their one-third fee petition and, in addition, expenses approximating $300,000 because they are reasonable. *See In re HealthEC LLC Data Breach Litig.*, 2025 U.S. Dist. LEXIS 107723, at \*34-35 (collecting cases approving one-third of the settlement amount in fees and finding 34% of a $5,482,500 class action settlement—*i.e.*, $1,864,050—plus expenses was preliminarily reasonable).

Class Counsel devoted substantial resources to prosecute Plaintiff's claims. Plaintiff submits Class Counsel's and Plaintiff's efforts to prosecute this case satisfy Rule 23(e)(2)(A)'s requirement of adequate representation of the Class, and Rule

23(e)(2)(C)(iii) which recognizes "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed Settlement." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Notably, the Court already recognized Plaintiff and Class Counsel's adequacy in its order and accompanying opinion granting class certification. ECF Nos. 82-83.

*Finally,* there are no side agreements for this Court to review, only the Parties' Release and Settlement Agreement. Although Rule 23(e)(2)(C)(iv) requires parties to "file a statement identifying any agreement made in connection with the proposal," No such statement is required here because there are no such other agreements.

In sum, the Parties' settlement warrants preliminary approval because it does not "disclose[] [any] grounds to doubt its fairness or [have any] other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys," and "it appears to fall within the range of possible approval." *NFL I*, 301 F.R.D. at 197-98.

### C.    The Notice Plan Should Be Approved

When a class action lawsuit is settled for damages, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[N]otice by first-class mail . . . has long been considered to satisfy due process in the class action context." *Dugan v. Towers,*

17

*Perrin, Forster & Crosby, Inc.*, No. 09-CV-5099, 2013 WL 5330116, at *5 (E.D. Pa. Sept. 24, 2013). In *Caddick v. Tasty Baking*, notice was effectuated by mail (granting preliminary approval of class-wide settlement of New Jersey wage claims and FLSA claims). *Caddick*, 21 U.S. Dist. LEXIS 70016, at *26-27.

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *LaChance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The form of notice must accomplish this purpose as required by Fed. R. Civ. P. 23(c)(2) and 23(e). Furthermore, "[a]lthough the notice need not be unduly specific . . . the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted).

Here, the Notice plan warrants Court approval because it meets these standards. Ex. 2. Within twenty (20) calendar days after the Court preliminarily approves the Parties' settlement, the Settlement Administrator shall mail the notice by First Class U.S. mail to each Class Member. Ex. 1 ¶ 38.

The Settlement Administrator will use its best efforts to confirm the accuracy of the addresses of each Class Member as necessary. If a notice is returned as undeliverable, the Settlement Administrator will perform a skip trace and, if it obtains a more recent address, resend the notice by First-Class U.S. Mail. The notice advises Class Members that any questions should be directed to the Settlement Administrator or Class Counsel.

Within sixty (60) days from mailing the notice, Class Members who want to be excluded from the Settlement Class must provide the Settlement Administrator with a request to opt-out, which will then be provided to Class Counsel and Defendant's counsel. Ex. 1 ¶ 41. Class Members who do not exclude themselves from the settlement will also have the opportunity to object to the Settlement by submitting to the Settlement Administrator a Notice of Objection post marked no later than sixty (60) days before the Final Fairness Hearing. Subject to any Order issued by the Court, failing to make objections in a timely manner will result in a waiver of any and all objections. Ex. 1 ¶ 42; Ex. 2.

Plaintiff proposes the Court appoint Epiq as the Settlement Administrator. Ex. 3. Epic estimates the costs associated with the notice plan, as well as related administration services, will be $153,376. Kocher Decl. ¶ 6. Epiq will work under the direction of Class Counsel and counsel for Defendant to implement the notice program this Court approves and directs.

19

"Several courts in this District have found Epiq to be a sufficient claims administrator." *Tower*, 2025 U.S. Dist. LEXIS 77128, at *31 (approving Epiq); *id.* at n. 5 (collecting cases); *see also Kostka v. Dickey's Barbecue Rests., Inc.*, No. 20-cv-03424-K, 2022 U.S. Dist. LEXIS 188186, at *44 (N.D. Tex. Oct. 14, 2022) ("Indeed, many courts throughout the country have appointed Epiq to be settlement administrator in large, complex, class action cases.").

### D. CAFA Notice is Required and Will be Timely Provided

CAFA requires notice of a proposed settlement to be served on "the appropriate Federal official" and the "appropriate State official" within "[n]ot later than 10 days after a proposed settlement of a class action is filed in court." 28 U.S.C. § 1715(b). The Settlement Agreement provides for CAFA notice to be given by the Settlement Administrator after this motion is filed. Ex. 1 ¶ 37.

### E. The Court Should Set a Final Approval Hearing

Pursuant to Rule 23(e), following notice, courts conduct a fairness hearing wherein all interested parties have an opportunity to be heard. Following this hearing, the Court will determine the fairness and adequacy of the Settlement. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *2-5, 11 (E.D. Pa. May 10, 2004).

The Parties ask the Court to set a fairness hearing more than 90 days after CAFA notice, pursuant to 28 U.S.C. § 1715(d), wherein the Court may consider,

among other things, whether to grant final approval of the terms of the Parties' Release and Settlement Agreement, whether to grant Class Counsel's request for attorneys' fees and expenses, whether to award Plaintiff $10,000 for her services as a class representative, as well as any objections made by Class Members regarding the Parties' settlement. The Court should also set the deadlines: (a) for Settlement Members to exclude themselves from the settlement and (b) for objectors to submit and file any objections in advance of the fairness hearing. The Parties have agreed, with respect to requests for exclusions, this date should be sixty (60) days after notice is initially sent, and for Class Members' objections, the deadline should be sixty (60) days before the Final Fairness Hearing.

## V.    CONCLUSION

For the above reasons, Plaintiff respectfully suggests the Court should grant this unopposed Motion and enter the accompanying proposed order granting preliminary approval of the settlement, authorizing the dissemination of the settlement notice, and scheduling a date for the Final Fairness Hearing.

Respectfully submitted,

Dated: October 24, 2025        By:    */s/ Charles J. Kocher*
                                         Charles J. Kocher, Esq. (NJ ID 016952004)
                                         Tyler J. Burrell, Esq. (NJ ID 377942021)
                                         Gaetano J. DiPersia, Esq. (NJ ID 442152023)
                                         McOMBER McOMBER & LUBER, P.C.
                                         50 Lake Center Drive, Suite 400
                                         Marlton, NJ 08053
                                         Phone: (856) 985-9800
                                         cjk@njlegal.com
                                         tjb@njlegal.com
                                         gjd@njlegal.com

                                         *Class Counsel*